# CHARLESTON.

## HESCHT *v.* CALVERT.

*(GREEN, JUDGE, absent.)

Submitted January 21, 1889.—Decided February 25, 1889.

1. GUARDIAN AND WARD—ACCOUNTING—COMPENSATION.

C. is appointed a guardian for. A. and G., infant children of J. H., who enlisted in the United States army and was killed in 1863 leaving a widow, who married a widower with eight children in the latter part of the year 1863 and by him became the mother of eight more children. The guardian applied for and obtained a pension for his said wards after considerable delay in November, 1875. In December, 1875, the mother of said wards and her second husband presented a claim to said guardian for keeping, clothing and schooling said wards for eleven years up to December 4, 1875, amounting to $1,056.00, which was paid by said guardian out of said pension-money as of that date, he taking their receipt for the amount so paid. Said guardian also paid said parties $105.00 on the 23d day of June, 1877, and $100.00 on the 6th day of January, 1879, for boarding, schooling and clothing said wards, taking receipts for the amount so paid, but neither receiving nor requiring the production of an itemized account of the claim so presented ; and upon a settlement of his accounts before a commissioner. on the 20th day of December, 1882, said guardian was charged with $1,505.53 as received in January, 1876, although really received in December, 1875, and $30.00 every three months thereafter until February, 1878, making the aggregate amount received $1,715.53, and credited with $1,056.00 as of December 4, 1875, $105.00 as of June 23, 1877, and $100.00 as of June 6, 1879, and $10.00 as of December 10, 1877, paid by said guardian to said parties as aforesaid, said commissioner charging said guardian with no interest upon the amounts so received by him. Upon a bill filed to surcharge and falsify said account and the proceeding had therein, *held*, that the claim presented by the mother and step-father of said wards stands on no different footing, from what it would, if presented by a stranger. (p. 228.)

2. GUARDIAN AND WARD—ACCOUNTING—INTEREST.

The money so received by said guardian for said wards should have been invested or loaned within thirty days after it was received, and he should have been charged with interest thereon after that time, unless he should have sooner loaned or invested the same. (p. 232.)

*On account of illness.

3. Guardian and. Ward—Accounting.

> An account of this character against an infant should not only be itemized but should be sustained by satisfactory proof; and a guardian, although duly authorized to disburse the principal of his ward's estate for education and maintenance, should require such proof before paying the same. (p. 231. )

4. Guardian and Ward—Accounting—Compensation.

> Said guardian having failed to lay before a commissioner of accounts a statement of receipts during the several years he had the money of his said wards in his possession and not accounted for, he should have no compensation for his services during the years he has thus failed to settle his accounts. (p. 231.)

5. Guardian and Ward—Accounting.

> If the recovery of such claim or any portion of it could be prevented by illegality of consideration or lapse of time or by any other fact within his knowledge, the guardian must avail himself of such defence, or he can obtain no credit for the amount paid. (p. 231.)

6. Guardian and Ward—Accounting.

> A guardian who has more than one ward should keep their accounts distinctly and settle them separately, showing his receipts and disbursements and the balance in favor of or against each. (p. 228.)

· *S. B. Hall* and *L. N. Tavenner*, for appellants.

*W. S. Wiley* and *R. McEldowney*, for appellees.

English, Judge:

On the 16th day of July, 1870, one A. G. Calvert was appointed guardian for Albert Marion Hescht and Gracilla Belle Hescht, infants and only children of Jacob Hescht and Mary Ellen, his wife, and entered into bond in the penalty of $600.00, with one Wilfred Moore as surety, conditioned for the faithful performance of all the duties of said office and trust, and to well and truly pay and deliver or cause to be paid and delivered unto said Albert Marion Hescht and Gracilla Belle Hescht, orphans of Jacob Hescht deceased, all such estate, as then was or thereafter should appear to be due said orphans; the said Jacob Hescht having enlisted in the service of the United States in 1862, and having been killed in said service during the year 1862, leaving said Mary Ellen, his widow, and the said Albert Marion and Gracilla Belle, his only children, surviving him. Some time in the year 1863 his said widow intermarried with

one Isaac Newton Hubbs, who was a widower with eight children, and in the course of time said Mary Ellen became the mother of eight children by her said second husband, Isaac N. Hubbs. The appellants, Albert M. Hescht and Gracilla B. Hescht, at the time of their mother's marriage with said I. N. Hubbs, were respectively of the ages of four and two years. It appears, that they made their home for the first year after their father's death with their mother, and in the next March they went and lived with their grandfather, until their mother intermarried with said Hubbs, in July, 1863, and then they went and lived with their step-father and mother as a family, sometimes working out from home, and sometimes working on the farm. On the 3d day of August, 1879, said Gracilla B. Hescht intermarried with one J. F. Hyder, and at once left the home of her step-father, and went to live with her husband.

It seems from the deposition of Albert M. Hescht, filed in the cause hereinafter mentioned, that he and his mother and step-father and seven of the children lived together until he was twenty years of age, except that a part of the time, when he was small, he lived with his grandfather, Cornelius Vorhees, in Wetzel county, W. Va., and part of the time with his uncle, Charles Smith, and part of the time with another uncle David Harland two or three different times. After this he went to live with his step-father and the family, who were farming, and worked on the farm for Mr. Hubbs until he was about sixteen years of age. He then went to work in the Pittsburgh stave-factory and worked for about two years. While working at said factory he lived at home, and, what he could save after buying his clothes, gave to his mother and step-father for the support of the family, or bought supplies for the family and took them home. When he was eighteen his step-father had bought a farm on the waters of "Proctor," and moved on to it, and he went with them and worked on the farm for one year. When he was nineteen years of age, he went to work at the carpenter's trade with one David Windgrove and worked with him that fall and that winter; that when he was twenty years of age, he went to Jackson county, W. Va., where he remained with his cousin for about five months, when returning to Wetzel

county he lived with Henry Hubbs. In the month of November, 1875, when said Albert M. Hescht was not quite seventeen years of age, and his sister was about fifteen years of age, a pension was granted them by the United States government upon the application of their said guardian, A. G. Calvert; and according to the statement of said guardian he received for his wards, in December, 1875, the sum of $1,505.53.

On the 20th day of December, 1882, said A. G. Calvert seems to have gone before one W. S. Wiley, a commissioner of accounts, and made a settlement of his accounts as guardian for appellants; and said commissioner found, that said guardian had received altogether for his said wards the sum of $1,715.53, and that he had paid out for their use and benefit $1,335.55, leaving a balance due them of $379.98 when they arrived at the age of twenty one years. Said commissioner however further reported, that in his opinion said guardian should be allowed for his commissions and services in attending to the interests of his said wards from the time of his appointment the sum of $115.00 and deducting that sum from the balance in said guardian's hands at the time said Albert M. Hescht arrived at the age of twenty one years ($379.98) shows a balance due said wards of $264.98, and, deducting costs, $7.00, would leave a net balance due said wards at the time they arrived at twenty one years of age of $257.98; that one half of that sum was due Albert M. Hescht, and one half due Gracilla B. Hescht, being $128.99 due each of them; and that after said Albert M. Hescht arrived at the age of twenty one years he had been paid by his said guardian $178.00, which would leave a balance due said guardian of $49.01; and that Gracilla B Hescht, after she arrived at the age of twenty one years, had been paid by her said guardian $175.00, leaving a balance due said guardian from her of $46.01.

To surcharge and satisfy this account settled as aforesaid before Commissioner W. S. Wiley this suit was brought at February rules 1886, in the Circuit Court of Wetzel county, and plaintiffs allege that they at no time had any settlement with their said guardian; that the accounts laid before said Commissioner Wiley are by no means correct, and they charge.

the same to be incorrect; that said account does not contain the true amount of money received by said Calvert as their guardian, or paid out by him; that he sought only to account for $1,715.53, instead of $1,741.46, with which he was properly chargeable; that the charges allowed said Calvert in said report are unjust and incorrect; that he has charged the plaintiffs with $1,056.00 paid by him to their mother as of December 4, 1875, when there was no such just charge against them, and none such could have been properly made against them; that in support of said charge said guardian presented a pretended voucher, dated January 25, 1876, for said sum of $1,056.00, purporting to be an account in favor of Isaac Hubbs and Mary E. Hubbs for keeping, clothing and schooling plaintiffs for eleven years up to December 4, 1875, which purports to be receipted by said Isaac and Mary E. Hubbs as of 15th day of January, 1876. The plaintiffs charge, that said item is erroneous, in that the same or the greatest proportion thereof was barred by the statute of limitations at the time it was paid, if ever paid; in that said Calvert had no right as such guardian to pay out for the support, keeping, clothing or schooling of the plaintiffs any thing more than the annual income of their estate, the rents, issues and profits thereof, without an express order from a court of competent jurisdiction, which they deny was ever obtained by him, because there never had been any such indebtedness incurred by said guardian; that the same was without consideration moving from the mother or from said Hubbs, as they had more than paid for any and all expenses to which their mother and said Hubbs had ever been put to in such keeping etc.; that the further items of $105.00 as having been paid June 23, 1877, and $100.00 as having been paid June 6, 1879, were erroneous and improper for the same reason; that instead of taking care of said estate, and rendering an account thereof during the infancy of appellants, he paid them various sums of money, which he had no right to do, and which amounts were allowed as credits to said Calvert upon his said settlement before said commissioner, and were erroneous charges, which said several unjust charges amount in the aggregate to the sum of $1,356.00. They further allege that it was the duty of said guardian to

loan out the said sum of money so coming into his hands, and to preserve the same for them; that since their arrival at the age of twenty one years the said Calvert had paid to the said Albert M. Hescht the sum of $113.00 and to the said Gracilla B. Hescht the sum of $145.00 but no other sum, and that there is still due the plaintiffs the sum of $1.668.01, with interest from January, 1876; and that the said Calvert, having failed to make and return a settlement before a commissioner, as required by law, forfeited all right to any commissions for his services; and that the report of Commissioner Wiley is erroneous in that it allows credit for such services amounting to $115.00.

The defendants, A. G. Calvert and Wilfred Moore, at the September term, 1886, of said Circuit Court, demurred to plaintiffs' bill and pleaded the statute of limitations, and the defendant A. G. Calvert filed his separate answer to the plaintiff's bill. The defendant Calvert in his answer admits the allegations of plaintiffs' bill as to his appointment and qualification as guardian for plaintiffs and as to his executing bond as such guardian with one Wilfred Moore, his co-defendant, as surety, also as to the age of plaintiffs, the time and manner of the death of their father, Jacob Hescht, and also that plaintiffs were his only heirs at law; that in the latter part of the year 1875 a pension was granted them and their mother, Mary Ellen Hescht, widow of said Jacob, by the government of the United States, but claims that said pension was not for the sum of $1,530.50, as stated in the bill, or at least that he only received $1,505.53 with a stipend of allowance of $30.00 every three months; and he denies that he received every three months $30.93, as charged in the bill, but only the sum of $30.00 each quarter. He says, that, at the time said money was received said Albert M Hescht was 16 years of age or about that age, and his sister, Gracilla B., was about the age of fourteen or fifteen years. He denies, that they were constantly employed in the labors of the family, or that they were compelled to and did earn their livelihood by rendition of any services to their mother or any one else, and alleges that on the contrary they were idle and of a roving disposition; that they were not disposed to attend school, and could be compelled to do so with

difficulty by their mother and step-father. He denies, that the plaintiffs had no notice of the settlement with W. S. Wiley, commissioner of accounts, but claims, that he notified them personally as to the time, when said settlement would be made, and that they were fully aware, that their mother would prove her demand, and agreed, that the said demand was correct and just. He claims, that the same was not barred by statute, in whole or in part; that no such objection was then urged by them against said claim, nor at the time when said report was presented to the proper court for confirmation; they did not make such objection, at the time the various sums of money were paid to them, after they became of age; that all of the charges made in said account are lawful and proper charges against the estate of his wards, and the report was lawfully confirmed by the county court of Wetzell; that the charges made by Ellen Hubbs, mother of his said wards, was for boarding, clothing and books for schooling and were necessary, proper and lawful charges; that he furnished to said Albert M. Hescht the sums of $20.00 and $45.00 before he reached his majority,—the first was borrowed money, which he agreed afterwards should be charged to his estate, and the second was for a horse colt, which he much needed, and which he agreed should be charged to his estate, after he came to his majority; that the money furnished Gracilla B. Hyder was at the time of and after her marriage, but before she was twenty one, except the $145.00,—this was given her after she was twenty one years of age. Said Calvert also files as part of his answer a letter from the commissioner of pensions of the United States government to show that he acted in good faith towards plaintiffs, and also to show, that they are properly chargeable with an account for food, clothing and tuition, and that such a charge is proper according to the intent of the statutes of the United States regulating the matter of the application of pension-money for the benefit of the children of deceased soldiers.

Upon this state of pleading, on the 2d day of October, 1886, a decree was entered in said cause requiring J. W. Newman, one of the commissioners of the court, after giving personal notice to the parties of the time and place at least ten days previous, to take an account and state and re-

port it to the court together with the evidence : *First.* What sum of money, if any, came into the hands of A. G. Calvert, guardian of Albert M. Hescht and Gracilla B. Hescht, now Gracilla B. Hyder, by virtue of the pension certificate named in the bill and received by him, for which he executed the said voucher No. 575 ; and what sum or sums were thereafter received by him from the government of the United States for the benefit of his said wards, including in this amount all sums of money received by him as such guardian from the month of December, 1875, until the year 1882 inclusive. *Second.* What sum of money was paid out and expended by him for the benefit of said Albert M. Hescht and Gracilla B. Hyder, when, where, to whom and for what purpose said money was paid, and any other matter deemed pertinent, or required by any party in interest. And it was provided, that depositions of the complainants theretofore taken and filed in the cause should be considered by the commissioner without exception, except that the same might be contradicted by competent testimony ; and that the report of the commissioner of accounts sought to be surcharged and falsified by complainant's bill should be taken as *prima facie* evidence of the correctness of said account but liable to be surcharged and falsified by proper testimony in any particular specified in complainant's bill.

On the 17th day of January, 1887, said commissioner, J. W. Newman, returned his report in pursuance of said decree and with it a notice, which seems to have been served upon him, "that the complainants would ask and insist, that said commissioner take into account in his report in this cause to the court the respective amounts due each of the complainants, Albert M. Hescht and Gracilla B. Hyder, based upon the evidence in this case and a letter filed before said commissioner from the pension department of the United States showing, that there was paid to said A. G. Calvert, guardian *etc.*, for the use of Albert M. Hescht the sum of $767.93 and for the use of Gracilla B. Hyder, $973.53, respectively, instead of upon the basis of an equal amount due to each one, as was done by the commissioner of the County Court." Said commissioner in making up his report credited said A. G. Calvert as guardian as aforesaid with $1,056.00

paid to Mary E. Hubbs as of December 4, 1875, also with $100.00 as of January 6, 1879, for boarding and caring for said wards, also $105.00 as of June 23, 1878, for clothing *etc.*, and $10.00 as of December 10, 1887, paid to her to procure books for said wards; aggregating the sum of $1,271.00; and after allowing other minor sums the entire amount allowed said guardian for expenditures for said wards, while they were minors, aggregates $1,335.55; and after charging him with $1,715.53, the amount received by him for said wards, and crediting him with the amounts paid by him to said wards, since they attained their majority, he finds a ballance due said guardian from Albert M. Hescht of $49.01 and a balance due said guardian from Gracilla B. Hyder of $46.09.

The complainants by counsel excepted to said report for the following reasons: "(1) Instead of following the direction of the order of reference it 'finds and reports the result of his investigations,' and that report is not in accordance with law, equity or the evidence in the cause. (2) No evidence is returned or referred to to support the report. There is not evidence to support the item of $1,056.00 paid December 4, 1875, to Mary E. Hubbs, or of $100.00 paid January 6, 1879, to Mary E. Hubbs, or $105.00 paid June 23d to Mary E. Hubbs; but they are all shown to be improper and unjust. (3) In that there is allowed guardian for services from time of his appointment for all services rendered $115.00, while it is charged and fully proven, that the defendant forfeited all claim to any compensation by not making annual settlements as required by law. (4) It allows credit to guardian for $20.00 paid A. M. Hescht in February, 1880, and $45.00 paid him May 20, 1880, in cash, as having been paid him after he attained his majority, while the evidence shows it was paid during his minority, which were improper and illegal charges or credits. (5) Report allows credit to guardian for $10.00 paid July 5, 1879, and for $20.00 paid November 8, 1880, to Gracilla B. Hyder, after she became twenty one years old, while the bill charges, and the evidence shows clearly, and it is not denied in the answer, that these sums were paid to her while a minor and infant in money, and are improper and unjust charges or credits; (6) The commis-

sioner ignores the plea of the statute of limitations and allows credit to guardian for moneys claimed to have been paid to Mary E. Hubbs aggregating $1,261.00 without any verified account of same, when the greater part was barred. These plaintiffs, owners of other estate, made no attempt to collect it from lands, and that too, when the money so paid was pension-money exempt from execution, that could be held by them and should have been so claimed and held by their guardian. (7) Because the findings of commissioner are contrary to the weight and preponderance of the testimony and unsupported by evidence, and for the many errors apparent upon its face. (8) Because it is evident that partiality or undue influence has prompted the commissioner. (9) In not crediting Albert M. Hescht and Gracilla B. with work performed for the family of Isaac and Mary Ellen Hubbs. (10) Because commissioner did not adjust the accounts so as to show the amounts received by the guardian for each ward, to wit, $973.53 for the use and benefit of Gracilla B., and $767.93 for the use of Albert M. (11) For not reporting that subsequently-acquired property is not subject to the payment of claims for maintenance etc. of wards especially claims in favor of parents. (12) Because commissioner did not charge the guardian with interest, as the law requires. Whereof they pray, that the report be not con. firmed but corrected by the court or recommitted to some other commissioner of the court with directions to ascertain, state and report a correct and true account."

On the 11th day of June, 1887, this cause came on to be heard upon the bill and exhibits, the answers of defendants, general replication by complainants, former orders and decrees, plea of the statute of limitations filed by defendants and issue thereon by complainants, and upon the report of James W. Newman, the commissioner, to whom the same was referred, and the depositions therewith returned filed in the cause on the 17th day of January, 1887, and the exceptions of complainants to said report, and upon the motion of the defendants to dismiss the suit, because T. B. Harness was not made a party, which last-named motion the court, as I think, properly overruled. The court then by its decree proceeded to overrule said exceptions to said commissioner's

report and after overruling the same held, that the said report should be reformed and amended so as to state the accounts of said Albert G. Calvert as guardian of Albert M. Hescht and as guardian of Gracilla B. Hescht, now Hyder, separately, and that for this purpose the said account of the said Albert M. Hescht should be credited with the sum of $767.93, that being the amount of the pension-money allowed him, and charged with the sum of $12.50, that being the one half of the attorney's fee allowed in the pension-case by law; and the further sum of $667.78, being one half of the credits allowed the said Albert G. Calvert in his settlement with W. S. Wiley, the commissioner of accounts; and also the sum of $57.50, being one half the sum allowed by said commissioner of accounts to the said Albert G. Calvert, guardian, for his services in procuring said pension; and the sum of $3.50, being one half the charge of costs of settlement with said commissioner of accounts; and the further sum of $178.00, paid to him by his said guardian, A. G. Calvert, before final settlement on the 20th day of December, 1882,—which account thus stated shows a balance due from said complainant A. M. Hescht to the said defendant A. G. Calvert, on the 20th day of December, 1882, of $151.35, which with interest computed thereon to the 20th day of May, 1887, amounts to the sum of $191.40, which the defendant A. G. Calvert was entitled to recover of the complainant A. M. Hescht; and that the account of said complainant Gracilla B. Hyder, formerly Gracilla B. Hescht, should be credited with sum of $973.53, that being the amount of pension-money allowed her, and charged with the sum of $12.50, that being one half of the attorney's fee allowed in the pension case by law; and the sum of $667.78, being one half of the credits allowed said Albert G. Calvert by W. S. Wiley, commissioner of accounts, on settlement; and also the sum of $57.50, being one half the sum allowed by said commissioner of accounts to the said Albert G. Calvert, guardian, for his services in procuring said pension; and the sum of $3.50, being one half the charge for costs of settlement with said commissioner of accounts; and the further sum of $175.00, paid to her by the said A. G. Calvert, guardian, before final settlement on the 20th day of December, 1882,—which account thus stated

shows a balance due from the said defendant, A. G. Calvert, to said complainant, Gracilla B. Hyder, on the 20th day of December, 1882, of $57.25, which, with interest computed to the 20th day of May, 1887, amounts to the sum of $72.51, which the complainant Gracilla B. Hyder was entitled to recover of the defendants Albert G. Calvert and Wilfred Moore.

From this decree of the Circuit Court of Wetzel county overruling the exceptions to the report of Commissioner J. W. Newman filed by the complainants, and stating the account between said guardian and his wards in the manner in said decree set forth, this appeal was taken by the plaintiffs in said bill.

The questions to be determined in this case are raised by the exceptions filed to Commissioner Newman's report. Did the court below commit an error in overruling and disregarding said exceptions? At the time the bulk of the pension-money was received by said guardian, amounting to $1,505.53, his wards were respectively seventeen and fifteen years of age, and the residue of said pension-money was received between that date (January, 1876) and February, 1878. This money came into the hands of said guardian, as any other money, to which they were entitled, would come. The reason, why a guardian is required by law to be appointed for infants, is, that their estates may be protected not only from strangers but, as experience indicates, more frequently from the avaricious designs of their nearest relatives. The guardian in this case evinced some prudence and caution by consulting the commissioner of pensions for instructions as to the disposition, which he should make of the pension-money received for his wards; but unfortunately for him it seems, that this letter of inquiry was not written until the 15th day of January, 1876, and according to his own voucher returned before the commissioner of accounts he had taken the responsibility of paying to Mary E. Hubbs, the mother of his said wards, $1,056.00 of said pension-money on the 4th day of December, 1875, more than a month before he wrote said letter, and was credited with that amount as of that date; and it will be seen by reference to the reply sent to him by H. M. Atkinson, commissioner of pensions, that he

did not follow the advice and instructions therein contained as to the residue of the money received by him as pension-money for said wards. Said commissioner writes:

"The design in granting pensions to children under sixteen years of age unquestionably was that this bounty of the government should be used in supplying them with a home, food, clothing, books, tuition, and other necessaries during their helpless infancy and minority, and, if all the pension-money is needed for these purposes, it should all be used without hesitation. Whoever furnishes these supplies, the mother included, should be paid for them what is just and equitable upon a properly stated and itemized account, allowed and approved by the court having probate jurisdition, which then becomes a voucher for you in the settlement of your account as guardian. In cases where the pension is not all needed for the comfortable support of the children, any surplus should be safely invested for their benefit, and paid only to them. The mother has no claim upon such surplus, nor does her claim upon the children's pension-money differ in any respect from that of a stranger." This letter of advice seems to vary but little from the terms of our statute in regard to the duties of guardians, (chapter 82, § 8, of the Code,) which provides that "no disbursement shall be allowed to any guardian where the deed or will under which the estate is derived does not authorize it beyond the annual income of the said ward's estate, except  *  *  * when (although old enough to be bound out as an apprentice) it shall be deemed best for the ward that the principal of his personal estate, or a portion thereof, should be applied towards his education or maintenance. But the guardian shall, before thus applying any part of such principal, file his petition before the Circuit Court of the county in which he was appointed for the permission thus to apply the whole or a portion of said principal, in which petition he shall state the facts relied on by him to induce the court to grant the prayer of the petition.  *  *  * Upon the hearing of the case the court may grant or refuse the petition, as to it may seem judicious and proper. No credit shall be allowed the guardian in the settlement of his accounts for expenditures for his ward under this section except for disburse-

ments of the annual income of his ward's estate, and for such amounts as the said court shall have first authorized to be expended of the principal of his personal estate, as hereinbefore provided."

If said guardian had availed himself of the provisions of this statute, his disbursements made in pursuance of an order of the court thus obtained would have been properly allowed by the commissioner; but, in the absence of such an order and under the circumstances disclosed by the evidence in this 'case I can arrive at no other conclusion, than that neither the commission of accounts, W. S. Wiley, nor J. W. Newman, commissioner of the Circuit Court, was authorized to allow said guardian credit for the sum of $1,056.00 paid Mary E. Hubbs December 4, 1875, the $100.00 paid her June 6, 1879, the $105.00 paid her June 23, 1877, or the $10.00 paid her December 10, 1877; and I am of opinion, that the court below erred in reforming and amending said guardian's account, as it did, upon the bases of the credit allowed him by W. S. Wiley, commissioner of accounts. Said decree is correct in crediting to Albert M. Hescht the sum of $767.93, that being the amount of the pension-money allowed him; and in crediting Gracilla B. Hyder, formerly Gracilla B. Hescht, with the sum of $973.53, that being the amount of the pension-money allowed her; but the court erred in ascertaining the amount, with which said wards should be respectively charged, by dividing the credit allowed said guardian in his settlement with Wiley, commissioner and charging one half to each. That would seem to be wrong, if for no other reason, because there is no itemized account, and no evidence in the cause, that the expenses of schooling, clothing and maintenance of said wards were equal. There was a difference of two years in their ages; and, while both worked away from home a considerable part of the time, and both helped to support the family while at home and away, yet there is nothing to indicate, that the costs of supporting and schooling them were the same, but on the contrary many things, which would indicate, that the amount of assistance they received from their mother and step-father were widely different. As to the credit then of $1,056.00, with which said guardian is credited as of December 4,

1875, there seems to have been no itemized account and no proof sufficient to sustain it.

Mrs. Mary E. Hubbs, the party, to whom said amount seems to have been paid by said guardian, in giving her deposition, when asked to state who furnished the clothing for Albert, until he was twenty one, answered: "His clothing was furnished by different ones. My father furnished some, and a good part they got, themselves." When asked: "Who furnished for Gracilla B.?" she answered: "She got a good many herself, and Mr. Hubbs furnished some, and my father some." When asked: "How was it as to board?" she answered: "When they were at home they boarded there, and when they worked away they boarded where they worked, except when Albert worked at the stave-factory, he then boarded at home." When asked: "When so working out did they contribute to the expenses of the rest of the family?" she answered: "Albert sometimes got some things for the rest of the family." When asked what they did when at home, she answered: "They helped work in the field, when there was work to do raising crops; both Albert and Belle." When asked where and for whom Gracilla B. worked when away from home, she answered: "She worked away from home for Mrs. Yoho; also for Mrs. Harlands, most of one winter; at Gilbert Vorhees about three months. She also stayed awhile with Mrs. Greene, and Mrs. Buchanan; a while at Jack Moore's, John Cochran's, Mrs. Dunlap's, and with a man living in Dunlap's house, at Simmon's, and at W. Wingrove's." And she also stated that Albert worked at the stave-factory, while he was away from home, one winter, with his uncle Charles Smith; was with his grandfather for some time after her marriage with Hubbs; worked at a job for Mr. Alexander; worked some at the carpenter's trade; and was in Jackson county part of one winter; and that they sometimes did not go to school, because their clothes were not fit; that she never made out any account. She thought the account was for $1,000.00; the $56.00 she knew nothing about. It seems, that the voucher produced before the commissioner was merely a receipt bearing date December 25, 1875, annexed to an account which reads as follows:

" A. G. Calvert, guardian of the minor children of Jacob Hescht, deceased, private of Co. F, 15th Ohio Vol. Inf'ty in the war of 1861, in account with Isaac Hubbs and Mary E. Hubbs, Dr. To keeping, clothing, and schooling Albert M. Hescht and Gracilla B. Hescht for eleven years up to Dec. 4, 1875, $1,056.00.

"Jan. 25, 1876, received the above $1,056.00 from A. G. Calvert, guardian of Albert M. Hescht and Gracilla B. Hescht, infant children of Jacob Hescht, late private of Co. F, 15th Ohio Vol. Infan'ty.

[Signed]      "ISAAC HUBBS,<br>"MARY E. HUBBS."

The sum of $105.00 was allowed as of June 23, 1877, and $100.00 as of January 6, 1879, on similar vouchers. Under section 4702 of the United States pension-laws it seems, that the child or children of certain deceased soldiers are entitled to a pension, which under the law goes into the hands of the guardian to be administered. The commissioner of pensions in his letter of January 15, 1876, instructs the guardian, that "the design in granting these pensions to children under sixteen years of age was to supply them with home, food, clothing, books, tuition and other necessaries during their helpless infancy, and if all the pension-money is needed for these purposes, it should all be used; that whoever furnishes these supplies, the mother included, should be paid for them what is just and equitable upon a properly stated and itemized account, allowed and approved by the court having probate jurisdiction, which then becomes a voucher for you in the settlement of your accounts as guardian. In case the pension is not all needed for the comfortable support of the children, any surplus should be safely invested for their benefit and paid only to them. The mother has no claim upon such surplus, nor does her claim upon the children's pension-money differ in any respect from that of a stranger."

Now, it seems, that the application for this pension was delayed for some five or six years, and in the mean time the wards arrived at the ages of sixteen and eighteen. Whatever assistance had been rendered to said wards by Mary E. Hubbs and her husband in the way of keeping, clothing, and schooling could only be properly ascertained by an in-

vestigation of the manner, in which they had been reared and cared for during a good many years; but these claims seem to have been presented to the guardian not in the shape of an itemized account not verified by affidavit and not having received the sanction or approval of any court. If then the mother's claim upon the children's pension does not differ from that of a stranger, as the commissioner of pensions indicated in his letter,—and I think he is correct in that,—I can not see how this pension-money as to debts, which have already accrued differs from any other money belonging to said wards, which may be in the hands of said guardian; and it seems to me, that the guardian should require as full proof in regard to claims of this character as any other; and if the recovery of said claim or any portion of it could be prevented by illegality of consideration or lapse of time or by any other fact within his knowledge, the guardian must avail himself of such defence, or he can obtain no credit. The letter of instructions above referred to from the commissioner of pensions indicates, that such claim should be paid by a guardian upon the properly itemized account, allowed and approved by the court having probate jurisdiction. Under our statute before applying the principal or any part thereof the guardian must file his petition before the Circuit Court of the county, in which he was appointed, for permission thus to apply it, (Code c. 82, s. 8), otherwise he can only disburse the annual income; and this guardian should have presented his petition under this section before disbursing the principal of his ward's estate. Again, the Code c. 87, s. 7 is clear and explicit, that "any such fiduciary, who shall wholly fail to lay before such commissioner of accounts a statement of receipts for any year within six months after its expiration, shall have no compensation whatever for his services during said year." I am of opinion that, under this provision of the statute, the court erred in allowing said guardian the sum of $115.00 for his services, and directing the same to be paid equally by his wards. Said guardian however should have been allowed any reasonable expenses incurred by him as such. See Code c. 87, s. 17. See, also, *Strother* v. *Hull*, 23 Gratt. 670; 1 Min. Inst. 458, 459. I am further of opinion, that said guardian should not be credited

with cash paid his wards during their minority, unless the proof is clear, that said wards ratified said payment by some act or assent of theirs after attaining their majority, and the said guardian should have been charged with interest as prescribed in Code c. 82, s. 10 upon balances of money in his hands at the end of any year.

The decree of the Circuit Court of Wetzel county rendered on the 11th day of June, 1887, in this cause must be reversed, and the cause remanded to said Circuit Court for further proceedings to be had therein ; and the appellants must recover their costs in this court.

REVERSED.    REMANDED.