# CHARLESTON.

33 489
43 716

### HOYLEMAN *v.* K. & O. R'Y CO.

. Submitted January 22, 1890.—Decided January 31, 1890.

1. LANDLORD AND TENANT—CONTRACT—FENCES—RIGHT OF ACTION.

   Where a land-owner makes a contract with a railroad company to fence its right of way through his lands, and subsequently said land owner leases said land for a year to a tenant, for farming purposes, and at the date of said lease the fence erected along said right of way by said railroad is in bad condition, and down in several places, the said tenant can not maintain an action for damages on said contract.

2. LANDLORD AND TENANT—FENCES.

   As between such tenant and his landlord, in the absence of any special covenant requiring the landlord to maintain the fences, it is incumbent on the tenant to keep said fences in repair.

*Knight & Couch* for plaintiffs in error.

No appearance for defendant in error.

ENGLISH, JUDGE :

This was an action brought before a justice of the peace of Putnam county, by James Hoyleman and John L. Porter, against the Kanawha & Ohio Railway Company, on the

18th day of June, 1888, which was tried twice before the justice. On the first trial it was submitted to a jury, which resulted in a verdict and judgment for the plaintiffs. This judgment was set aside, and a new trial awarded; and on the second trial the justice found for the plaintiffs, and gave judgment in their favor. From this judgment an appeal was taken to the Circuit Court of said county, which was tried at the September term, 1888. At the second trial before the justice, the defendant appeared, and pleaded "Not guilty," and the appeal was tried in the Circuit Court upon the pleading filed before the justice; no other plea being added. The appeal was tried in the Circuit Court before a jury, who were sworn to inquire of the damages, ignoring and disregarding the question raised by the plea of "Not guilty." This was not the issue before the justice, and no new issue was made by additional pleading in the Circuit Court. The jury assessed the damages as they were sworn to do, as appears from the verdict rendered: "We, the jury, render a verdict in favor of the plaintiffs for damages, $150.00." They did not find the defendant guilty before assessing the damages, and they were not sworn so to do; and this we regard as error.

It appears that one J. J. Bright, the plaintiff's landlord, had a contract with the A. & N. W. R. R. Co., that the right of way through a tract of land in said county containing 350 acres, owned by said Bright, should be fenced with a good and lawful fence on the side next to the river when notified so to do; that the defendant now owns the railroad that was built by the A. & N. W. R. R. Co. in 1881 through said farm; that the plaintiffs rented said farm for the year 1887, about 150 acres of which is bottom; that at the time of renting, the fence along the railroad was in bad condition, and the agent of said Bright gave notice at different times to the agent and employes to build up said fence; that in the year 1887 the plaintiffs had thirty two acres of said land sown in wheat, three acres in grass, and corn in the balance, of 100 acres; that the railroad let the water that came from the hills run through its road-bed in five different places; and the evidence proceeds to detail the losses which accrued to plaintiffs by reason of said water

flowing on said land, and by reason of the bad condition
of said fence. It, however, appears that a portion of said
land was wet, and the water came from the hill-side, and
spread over said land before said railroad was built. The
summons is not copied in the record, neither is there any
complaint or bill of particulars filed; but the plaintiffs ap-
pear, from the transcript of the justice, to have pleaded
orally, in substance, that the defendant had damaged the
plaintiffs $300.00 by draining the water off of its railroad on
the lands of plaintiffs; also, by neglecting and refusing to
fence its said railroad.

It seems to me this complaint of the plaintiffs is not sus-
tained by the evidence. Although it is an agreed fact that
the plaintiff in error now owns and operates, and did in 1887,
the railroad that was built in 1881 by the A. & N. W. R. R.
Co., with which company J. J. Bright, plaintiffs' landlord,
had a contract that the right of way through said farm
should be fenced with a good and lawful fence, when noti-
fied so to do, on the side next to the river, which road passes
through said farm, yet it does not appear that said fence was
to be maintained continually by said company. It may have
been built in 1881, and been destroyed, in a variety of ways,
between 1881 and 1887· It does not appear how the defend-
ant company became the owners of said railroad, or to what
extent they are liable to carry out the contracts of the A. &
N. W. R. R. Co.; neither does the evidence disclose the
terms and stipulations of the contract between J. J. Bright
and said company so as to show the extent of the liability of
the plaintiff in error, if it was conceded that it was to the
fullest extent liable for the contracts of the A. & N. W. R.
R. Co. The defendants in error merely rented the land for
a year; and, as we understand the law, they took it in the
condition it was when they rented it, and could not require
J. J. Bright to repair the fences.

The contract for building the fence was made by the A.
& N. W. R. R. Co. with said landlord, J. J. Bright, and not
with the defendants in error; and, assuming it had been
shown by the evidence that the plaintiff in error had in any
manner taken upon itself a liability for any damages which
might result from a failure to keep said fence in repair, said

tenants could not maintain an action against the plaintiff in error for a breach of contract with their landlord. It does not appear that said J. J. Bright, by leasing said premises to the defendants in error, assigned to them his contract with the A. &. N. W. R. R. Co. or any claims against the Kanawha & Ohio Railway Company, to carry out and perform the contracts of said first-named company if any such he had. The defendants in error could assert no claim for damages against their landlord, J. J. Bright, in the absence of a special convenant on account of the condition of said fence, or any loss sustained by them by reason thereof. Much less could they maintain such an action against the plaintiff in error, an entire stranger to their contract. 1 Tayl. Landl. & Ten. § 175*a*, in reference to the liability of the landlord to the tenant for injuries, says: "The lessor's liability to the lessee is, however, much more restricted, as the former does not warrant the condition of the premises; and the tenant, because he can inspect them, assumes the risk of their state. For any injury suffered by him during his occupancy, by their defective condition, or even faulty construction, he can not make the lessor answerable unless there was misrepresentation, active concealment, or perhaps a total inability on the tenant's part to discover the defect before entry." 1 Washb. Real Prop. 150, says: "In England, it will be sufficent, in respect to the fences, if the tenant keep them in as good repair as he finds them." Again he says, on the same page: "The tenant is bound to protect the premises from waste, even against strangers, or is responsible to the reversioner for the same, and may have his remedy against the wrong-doer."

As to the damage claimed by reason of the water flowing on the land, one of the plaintiffs stated in evidence that if said land was properly ditched about two thirds of the water that came on it from the hill would go up the river, into Farley's creek, and the balance would come down the river; and it is not claimed that it was in any manner incumbent on the plaintiff in error to properly ditch said land. The evidence further shows that the surface water ran off the hill-side, and flowed on the land; and although the plaintiffs' witness Showen says that in 1887 water was turned through the railroad in

water would not have thus spread out on the land in the absence of the railroad, and it is shown by the plaintiffs' witness James Smith that the water runs down off the hill, and would naturally run down on the bottom, and it does not appear that the damage resulting therefrom was increased by its running through said railroad in four or five places.

As to instructions Nos. 1 and 2, asked for by the plaintiffs in error, which read as follows : (1) "The jury are instructed that, if they find from the evidence that the plaintiffs had no contract with the defendant or its predecessors about fencing railroad track through the farm rented by the plaintiffs, then the defendant is not liable to the plaintiffs for damages for failure to fence." (2) "If the jury find from the evidence that the fence of the railroad through the farm upon which plaintiffs lived in 1887 was bad, and practically worthless, at the time said plaintiffs rented said farm of the owner, J. J. Bright, in January, 1887, then the jury can not find damages for the plaintiffs on account of defects in said railroad fence which existed at the time the plaintiffs rented said farm." These instructions were objected to by the plaintiffs, which objection was sustained by the court. I am of opinion that said objection was properly sustained by the court, and said instructions were properly rejected by the court on account of irrelevancy ; but, as the evidence in the cause does not show that the damages complained of were caused by the negligence of the defendant, and for the further reason that the plaintiffs could not sustain an action for damages against the defendant for failure to fence the railroad, I am of opinion to reverse the judgment of the Circuit Court at the costs of the defendants in error, and dismiss the plaintiff's action.

REVERSED. DISMISSED.