# CHARLESTON.

## Windon v. Stewart.

Submitted June 11, 1897—Decided November 10, 1897.

43 711
f46 267
43 711
848 489
43 711
52 483

1. GUARDIAN AND WARD—*Ward's Realty—Contracts.*
   A guardian may lease the land of his ward, either by private contract or public outcry.   (p. 715.)

2. GUARDIAN AND WARD—*Ward's Realty—Liability of Guardian.*
   If a guardian lease the land of his ward in good faith for a rental believed by him to be fair, he can not be charged with a higher rental, unless it be so inadequate as to carry the conviction of bad faith.   (p. 714.)

3. GUARDIAN AND WARD—*Trustee's—Liability of Fiduciary.*
   Where a guardian or other fiduciary or trustee does an act, and it is sought to make him liable for a loss consequent thereon, on the theory that his act was injudicious and improvident, if the act was in entire good faith, and the fault only an error of judgment and want of sharp-sighted vigilance, and the act be one which, as a prudent man, he might have done in his own matters, he cannot be made liable.   (p. 714..)

4. TENANTS—*Liability of Tenants—Repairs—Lease.*
   A tenant must make ordinary repairs to buildings, repair and keep up fences, remove and keep down filth growing on farming and grazing lands, at his own expense, unless otherwise provided in the lease.   (p. 716.)

5. LANDLORD AND TENANT—*Improvements.*
   A tenant can not make permanent improvements, and charge the landlord therefor, without the latter's consent.   (p. 716.)

6. GUARDIAN AND WARD—*Tenants—Repairs.*
   A guardian can not allow the tenant for repairs which the tenant should make, and get credit in his account against the ward.   (p. 716.)

7. PARENT AND CHILD—*Maintenance.*
   A father, if of ability, must support his child, and can not charge him with maintenance, though the child have estate of his own.   (p. 718.)

8. GUARDIAN AND WARD—*Ward's Personal Estate—Court's Authority.*
   A guardian can not, without a previous order of court, use any part of the principal of the ward's personal estate for

any purpose, and a court can only make such order for maintenance or education, not for improvement of land or other purpose. (No opinion is intended as to a child too young to be bound out.) (p. 718.)

9. SETTLEMENTS—*Surcharge and Falsify—Measure of Relief.*
   Where a former settlement is surcharged and falsified, no new settlement covering and overhauling the whole transaction is to be made, but an account is made of items surcharged or falsified, and the sum of such items is the measure of relief to the party injured by the former settlement. (p. 721.)

Appeal from Circuit Court, Harrison County.

Suit by Ingaby M. Windon agaist William A. Stewart, as his guardian. Decree for plaintiff and defendant appeals.

*Reversed.*

JOHN BASSEL, for appellant.

LEWIS C. LAWSON, for appellee.

BRANNON, JUDGE:

This is an appeal from a decree in a chancery suit by Ingaby M. Windon against William A. Stewart to surcharge and falsify *ex parte* settlements made by Stewart as guardian of Ingaby M. Windon, *nee* Stewart, in which those settlements were reviewed, and a liability larger than that shown by them imposed on the guardian, and he appeals.

The first assignment of error is that the order of reference to a commissioner was improper when made, because at that time *prima facie* evidence to impugn the former settlements had not been adduced. In the first place, the last or final *ex parte* settlement was never confirmed. Again, evidence tending to show that rent for the land of the ward was too little had been given before the reference. And again, these settlements show errors on their face in allowing principal of the ward's estate to be used in improving land and in maintenance of the ward, without order of court. Under these circumstances, point 2 in *Seabright* v. *Seabright*, 28 W. Va. 412, would justify the reference, as it holds that, if errors appear on the settlement, even the bill need not specify those errors, but there may be at once a review of such settlement; and, more-

over, point 6 in that case holds that, even where there is no error apparent on the settlement assailed, and in a case where no reference is at the time proper, yet, if it turns out at last to have been proper from further developments in the case, the court will not, because of such premature reference alone, reverse a decree.

The second assignment of error is that the decree charged the guardian with four hundred and sixty-five dollars and ninety-six cents additional rent on the ward's land beyond that charged in the former settlements. I shall refrain from detailing under this head, or any other, the large volume of differing and conflicting oral evidence, since it is cumbersome and improper to load opinions with such evidence, as they are intended only to lay down principles of law. The guardian rented the land, in which the ward had a third interest, to the father of the ward, Robert M. Stewart, who is brother to the guardian, for five years, at one hundred and seventy-five dollars per year, and two years at two hundred dollars, and the decree charged two hundred and sixty dollars. A quantity of evidence given to show the number of cattle which the land would sustain, and probable profits therefrom, and what land was cropped, and opinions of witnesses as to the rental worth, tend to show by a preponderance that the land was worth a larger rental; but men would differ so much on such a matter, as is strikingly manifest from the estimated rent by fourteen witnesses in this case, ranging from one hundred to four hundred dollars. The commissioner did not really pass on this matter himself, but, adding the aggregate estimates of all the witnesses, and dividing by their number, took the quotient as a finding. This was held in *Thompson's Case*, 8 Grat. 637, not to vitiate a verdict, but it is hardly a proper process for a commissioner. The same reason does not apply. But the fact that it is not to be regarded as a definite finding by the commissioner is shown by the fact that, after stating the process by which two hundred and sixty dollars rental was reached, he said, "if the court adopts this as the proper amount," then a certain statement would be right, thus submitting the matter to the court. Where a commissioner finds neither way, but submits to the court, it is not such a finding as requires any exception. Only a finding needs an

exception. Hence we can not apply, as we are urged to do, the principle laid down in *Hartman* v. *Evans* 38 W. Va. 669, (18 S. E. 810), that every presumption is made in favor of the correctness of the decision of a commis‐ sioner in chancery, and, if the testimony is conflict‐ ing, the court rarely interferes with his finding on facts, if he makes no error of law in the result. And, if we would, we could not ignore another very just and important rule or presumption of law, and that is that a sworn fiduciary's action, if *bona fide*, or, to speak more accurately, if not appearing to be *mala fide*, is upheld, and he is not placed under a greater burden than it imposes.

When this guardian rented, he is presumed to have acted *bona fide*, and it must clearly appear that he did not, to charge him with greater rent than he received. The office of guardian is rarely lucrative, and is generally un‐ dertaken from motives of duty on account of kinship or kindness, rather than for profit, and we ought not to be so strict with them, or other trustees, where mere judgment and prudence are involved, as to strike terror into man‐ kind when acting for others, and deter cautious, prudent, business men from taking upon themselves offices of kind‐ ness and humanity. If there is no *mala fides*, nothing wrongful in the conduct of the trustee, the court will always favor him. Trustees acting with reasonable care and prudence, and with the best judgment they can upon the occasion, will be protected, notwithstanding an un‐ foreseen loss of the trust subject, or it may turn out not to be for the very best. See Judge Lee's opinion, *Elliott* v. *Carter*, 9 Grat. 557. "It is a general principle, applicable to fiduciaries of all kinds, and, among others, to guardians, that no more shall be required of them than that they act in good faith, and with the same prudence and discretion that a prudent man is accustomed to exercise in the man‐ agement of his own affairs." 1 Minor, Inst. 448; *Myers'* *Ex'r* v. *Zetelle*, 21 Grat. 758. Common skill, common cau‐ tion, common prudence, are all that can be required. The tract was two hundred and twenty acres farming land, of which one-third belonged to the ward. Much evidence shows it was in bad condition from filth, bad fences, *etc.* The guardian took the opinion of three persons, who

deemed one hundred and seventy-five dollars a fair rental. He did not rent at public renting, and this is complained of as a sign of fraud, but the law does not require a public renting. Some evidence was given that he was offered more, but he denies this, and there is some question as to the solvency of the parties offering more, and it is not clear that it was at the same time. It is said he did not seek to rent to any one but his brother. But the brother was the father of the children, and it is so natural that he should rent preferably to the father that we can hardly fault him for this. Two of the children were young girls, and no doubt all thought, as any of us would, that, as the father was of limited means, it was fair, reasonable, and not imprudent to let him have the land at a moderate rent, to help support the children, as more conductive to their interest. We must find him guilty of intentional corruption towards these children to compel him to pay them rent which he did not actually receive. The only sign of this is that the father owed this guardian a very considerable debt, and, it is claimed, designed by this cheap rental to enable him to profit by the farm so as to pay the debt. This is not a controlling or conclusive circumstance. So we think there is error in charging him beyond rent received, beyond the sum fixed in the leasing, one hundred and seventy-five dollars for seven years, and two hundred dollars for two years.

It is contended that the commissioner and court erred in charging any rent at all from the date when the land was divided, and Mrs. Windon's part set off to her, to the day of her majority. It is contended that she and her husband had possession during that period. The evidence does not show this. There is conflict here, but the preponderance is the other way. For only a few months before majority was she in actual possesion, and then only of a part. The commissioner found one way, charging rent at one hundred dollars per year,—the lowest sum fixed by any witness,— and we cannot disturb the decree for this. Besides, the statute gives the guardian possession until the ward's majority. She cannot contract with him. Her husband had to support her outside her land. Under circumstances of his inability, it might be said that, as she was entitled to the rents, if she got them by possession, they might be

treated as necessaries; but she was entitled to have the land rented out to yield rent, and be supported by her husband. Neither she nor her husband was entitled to possession. The guardian seems to have leased the land to his brother during the guardianship. If he was lax and negligent, and did not get rent during this period, it was his own fault, and he is chargeable with what he received, —or, by due diligence might have received. 1 Minor, Inst. 446. The guardian in this case seems to have been lax, leaving everything to his brother, and we explain this by considering the close relationship of the parties, and his supposition that all would be satisfactory; but that is his misfortune of being too liberal and trustful, and we cannot deny the legal right of the infant who, on marriage and majority, is dissatisfied, and demands rigid account according to law, as is frequently the case, often enforcing hardship.

The third point assigned as error is that the guardian is charged four hundred and ten dollars and twelve cents as principal improperly disbursed, as well as two hundred and sixteen dollars and twenty-nine cents interest thereon. This was money paid to the guardian, not from rent of land by him, and is principal. The guardian claims that it was expended in improvements on the land, and in the maintenance of the ward. The improvement on the land was cutting filth, some new fence, and a small shed annexed to the barn. The law requires a tenant for years to make repairs and keep land in tillable or pasturable condition, by removing what is commonly called filth, such as elders, briers, and like growth, unless otherwise stipulated in the lease. He must repair existing fences. He must fence with new fences, so far as may be necessary to his use of the land. *Hoyleman* v. *Railway Co.*, 33 W. Va. 489 (10 S. E. 816); 2 Minor, Inst. 682, 686; Tied. Real Prop. §§ 77, 189; Tayl. Landl. & Ten. §§ 327, 343. Of course, a tenant cannot build new houses, or make permanent improvements beyond what falls on himself as a duty to repair, and charge the ward for it. Tied. Real Prop. § 189; 12 Am. & Eng. Enc. Law, 720, 723. If the rent were to be thus absorbed, or it had been so 'agreed, it would be grossly inadequate rent, virtually giving the use of the land. Even with this it is pretty difficult to uphold the

guardian's action. It follows that this guardian had no show of right to allow the tenant a dollar for the work he claimed in cutting filth, repairing or building fences or any building, against even the rent; and less still, after thus absorbing the rent, to invade the said principal money to pay for such improvements. There is another reason why he could not, by allowance to the tenant, or by any action of his own, touch the said principal, and that is that section 8, chapter 82, Code 1891, prohibits expressly any allowance to a guardian, for any purpose, out of the principal, unless he first gets leave of the circuit court to do so. Until the act of 1882, the law was that the principal of the personal estate might be applied for the education and maintenance of the ward, without previous order of court, but at the peril of the guardian; for when he comes to settle the court must be satisfied that such expenditure was judicious and proper. This placed the guardian in a very embarrassing and dangerous condition. Often guardians were harassed by their female wards after marriage by controversy as to the propriety of expenditures honestly and in good faith made, even at the earnest request of the ward, and often suffered losses. It was, therefore, a prudent act, beneficial to ward and guardian,—that act of 1882. It closed the door upon dispute by settling it in advance by court order. It is prohibitory in terms. It prohibits any invasion of the principal without previous court order, and denies him credit therefor. It closed the door against peculation and wrong by the guardian. It denied him any discretion. He must appeal in advance to the court for leave to expend any part of the principal, giving the ward a hearing, and binding him by a decree, closing his mouth ever after against contesting the expenditure. Anyhow, so the law is writ. The character of the change by the act of 1882 leaves no room to question what the legislature meant. So this Court construed it in *Hescht* v. *Calvert*, 32 W. Va. 215, 23 (9 S. E. 87). We cannot say, under this act, that if the expenditure be such as a court, if asked, would have allowed, it will be allowed without previous sanction by a court: (1) Because that was the old statute, and this act chaged that; (2) because the act is in terms prohibitory of such expenditure, and in words requires a previous appli-

cation to court; (3) because it would open the door to a discretion by the guardian liable to abuse and destruction to the ward's estate, and fruitful of litigation between guardian and ward; (4) because it would deny the ward a hearing before the expenditure touching its propriety,—a safeguard given by the act,—and take from him the still more important safeguard to him of having a court, in advance, pass on the wisdom of the expenditure. And we can realize that a court would often refuse to sanction in advance an expenditure which, after it would be made, it would, out of tenderness to the guardian, hesitate to make him lose. This would not carry out the design and policy of the legislature. A question may arise whether this requirement of a previous court order is applicable to an infant too young or infirm to be bound out, under clause 1, s. 8, c. 82. I express no opinion on this question. In no view could any of the principal be allowed, by a court or guardian, for repairs or improvements, because the statute allows this only for maintenance or education. Appellant's counsel argues with emphasis that, if it was proper to charge the said sum of principal as improperly expended, it was surely improper to charge interest upon it. If the expenditure had been proper, the interest could be applied, but for reasons stated above the expenditures were unwarrantable. The tenant had no claim to payment for the work he did. And if it be said that the guardian could apply it to maintenance, I answer that he could not do so, for reasons which I will give under the fourth assignment of error. The principal being chargeable, interest followed of course; and then, in fact, it is a question of allowance for improvements and maintenance as set-off or credit, rather than a question of whether interest is chargeable.

The fourth assignment of error is that the decree charges the guardian with one hundred and fifty-six dollars and fifty-four cents, and interest thereon, as improperly credited to the guardian in the former settlements, for boarding and clothing his ward. The ward was thirteen or fourteen years of age, when the guardianship commenced. Her father was a large, stout man, engaged in farming, and later in butchering and storekeeping in Clarksburg. He was in middle life, and in active business. He

was neither poor nor rich; but he owned a house, horses, cows, farming utensils, and means of business, and was capable of making, and did make, a living for his family. The guardian trusted him for five years' rent without security. The law, as well as affection, put on him the burden of supporting his child, even though she had estate. *Evans* v. *Pearce*, 15 Grat. 513; *Griffith* v. *Bird*, 22 Grat. 73; 1 Minor, Inst. 456. Besides, this evidence shows that she performed services in the family equal in value to her board and clothing. Therefore it was proper to disallow pay therefor.

Appellee's counsel cross assigns error in that the guardian is charged with one-third instead of one-half a certain sum of three hundred and nineteen dollars. The mother of these Stewart children, as legatee of one Devers, was entitled to certain money, and Devers' executor gave her a note therefor, and on her death, supposing the children entitled to all of it, not regarding the husband, as he was, entitled to a third as a distributee of his wife, took up this note, and gave his note to this guardian of Mrs. Windon and her sister, and when this new note was paid, Stewart, the guardian, paid one-third to Robert M. Stewart, as husband of his deceased wife, and accounted to Mrs. Windon for only a third of the money. The first question is, had the husband any claim against the guardian,—any legal demand? The administrator of the wife was the one to collect the note given her, and out of it pay the husband one-third and the balance to the children, and his demand was against the administrator. The husband, through her administrator, could still look to her debtor, the payment to the guardian not being good against him. But the guardian did, in fact, receive money from a debt, part of which belonged to the husband, and I suppose the distributee can follow it into the guardian's hands, without calling on his wife's administrator to do so. If one of two distributees equally entitled receive from the administrator of a decedent a sum belonging to both, I should say that the other could sue either the administrator wrongfully paying to one, or sue the distributee receiving the whole, for money had and received to his use. Is it different where a guardian receives? I suppose if a guardian or other trustee or fiduciary, receives money to which his

*cestui que* trust is not entitled, money which ought not to have gone into his hands, he may pay it to the one entitled. The *cestui que* trust is not entitled to it.

But counsel bases his position on the theory that, when the guardian paid to the husband, his claim as distributee of his wife had become barred by limitation. He wants to count from the death of Mrs. Stewart, saying that then his right as distributee accrued. This is not tenable. That might·be as against Devers' estate, less one year, but not as to a demand for money had and received by the guardian. Did the statute of five years begin on February 21, 1884, when the old note was settled by a new note to the guardian? If so, the demand is barred, and the guardian could not pay a barred demand, as section 5, chapter 87, Code 1891, says a guardian paying a barred demand shall have no credit for it. That new note was a payment for some purposes, perhaps, but not, I think, such payment, as between the husband and guardian, that we can say that the husband could then sue, as no money was then actually paid to warrant him in suing for money had and received to his use. His action accrued only on actual collection. In this view, the demand was not barred, and there is no ground for this cross assignment of error.

Appellee excepts to the report because it allowed for improvements. This exception was well taken, for reasons above given. The report charges the increased rent at two hundred and sixty dollars one-third being eighty-six dollars and sixty-seven cents, and credits the guardian with fifty-eight dollars and thirty-three cents, the third of rent of one hundred and seventy-five dollars, thus allowing the guardian for improvements; and the ward loses this, unless the charge of four hundred and ten dollars and twelve cents for improper disbursements, operates to repair this loss. No improvements or repairs are to be allowed. Appellant claims that, as there is a charge of four hundred and ten dollars and twelve cents for money received and improperly disbursed, and a charge for two hundred and fifty-six dollars and thirty-six cents improperly allowed for board, he is doubly charged, and he pays this two hundred and fifty-six dollars and thirty-six cents twice. If that four hundred and ten dollars and twelve cents be items improperly credited the guardian in the former settlement,

and the two hundred and fifty-six dollars and thirty-six cents separate and distinct therefrom,—all improper charges,—I see no double charging. If a guardian were charged with money received, charged in former settlement, and also charged with an item improperly allowed the guardian in former settlement, it would be a double charge of the latter item. I do not so understand this. In view of a further account, I will remark that when a bill surcharges and falsifies a former settlement, you do not make a new account covering and overhauling the whole transaction, but you make an account embracing items found improperly omitted and allowed in the former settlement,—that is, items surcharged or items falsified,—items surcharged being those which should have been, but were not charged in favor of the party attacking the settlement, and items falsified being those improperly charged against him in the former settlement. You simply correct the former settlement by giving him their benefit. Their sum, with proper inclusion of interest, is the measure of his relief. *Shugart* v. *Thompson*, 10 Leigh, 434. Reversed and remanded.

*Reversed.*