In the Matter of the Accounting of FRANK F. HATHAWAY, as Committee, etc., of FRANCIS A. BUSH, a Lunatic.

*Committee of lunatic — when investments taken by him from his predecessor, in lieu of cash, will be deemed to have been made by him — his duty in making investments — when not liable for losses.*

A person, who had assumed the duties of a committee of the person and estate of a lunatic, acknowledged by his inventory the receipt of a certain amount of cash; his predecessor, by his account, having charged himself with such sum as cash on hand, and having made no claim that any of such cash was at that time invested in certain bonds and mortgages, which the former committee in fact subsequently turned over as representing such cash to the new committee.

*Held,* that the new committee, upon his accounting with the administrator of the deceased lunatic, was chargeable with the responsibility for the investment of the cash in such bonds and mortgages, taken by him in lieu of cash, to the same extent as if the investment had been voluntarily made by him.

The fact that one of the mortgages was given by the prior committee for the purpose of meeting in part his liability as committee, as established upon his accounting, does not in any way prejudice the rights of the committee succeeding him to receive the same as an investment, if he had reason to believe, and did believe, that such mortgage was an adequate security for the amount invested therein.

A committee of a lunatic is bound to use such diligence and prudence in the care and management of the lunatic's estate as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs; the preservation of the fund, and the procurement of a just income therefrom, are primary objects of the creation of the trust, and are to be primarily regarded.

Although trusts for the benefit of the incompetent and infants should be administered with great care and fidelity, and improvidence or dishonesty on the part of a trustee should be visited with severe condemnation and penalties by the courts, yet, when the trust has been administered with the fidelity, prudence and caution that would characterize the management of his own affairs by a prudent business man, if loss happens it should not be visited upon the trustee.

APPEAL by Frank F. Hathaway, as committee, etc., of Francis A. Bush, a lunatic, from an order of the Supreme Court, made at the Montgomery Special Term and entered in the office of the clerk of the county of Clinton on the 9th day of February, 1894, modifying, and affirming as modified, the report of a referee appointed on the appellant's accounting, with notice of an intention to bring up

for review on such appeal said order, the report of the referee and all proceedings had in said matter.

*Matthew Hale* and *G. H. Beckwith*, for the appellant.

*L. L. Shedden*, for the administrator of Francis A. Bush, deceased, respondent.

MAYHAM, P. J.:

Francis A. Bush, the lunatic, having died intestate, Alfred Guibord was duly appointed administrator of his goods, chattels and credits, and as such, filed his petition for the accounting of the committee, Frank F. Hathaway, who thereupon joined in such petition, and having filed his accounts as such committee, the court duly appointed Royal Corbin as referee to take and state the accounts of such committee, who, after hearing the parties, made his report, which, on application to the court, was modified, and as modified, was confirmed, from which order of confirmation this appeal is taken.

The first question raised on this appeal is, as to whether two mortgages held by the committee, as such, should be turned over to and received by the administrator at their face value as a part of the trust fund in the hands of the committee, or whether he should be charged with the face value of the same in cash. The appellant Hathaway succeeded Hiram Clark as committee of the person and estate of Francis A. Bush, the lunatic.

Clark had been such committee for several years, and on his accounting on the 14th of February, 1892, there was found to be due the estate of the lunatic the sum of $8,257.13, and also a bond and mortgage for $1,000 given to the committee Clark by one Geo. L. Clark, and a pension certificate issued to the lunatic, granting him a pension at the rate of seventy-two dollars per month.

On the 15th of February, 1892, Hathaway, as committee, filed his inventory of the estate of the lunatic, stating that he had then on hand, cash $8,257.13 and the Geo. L. Clark mortgage of $1,000, for which he on that day gave his predecessor Clark his receipt.

The referee finds that the appellant Hathaway, at the time of giving such receipt, received in lieu of cash, from his predecessor Clark, a mortgage of $2,500, executed by said Clark to Merritt

Sowles, and assigned by him to Hathaway as such committee, and that at the same time, in lieu of cash, he, as such committee, received another mortgage made by Gonyea to Webster Clark, a brother of Hiram Clark, committee, on which there was unpaid and owing the sum of $1,466.50, principal and interest. Hathaway, as such committee, received from his predecessor several other real estate mortgages as cash, about which no question is raised here.

The referee held and reported that the Clark and Gonyea mortgages were not proper securities in which to invest the trust funds in the hands of the committee belonging to the lunatic, and refused to allow the appellant to turn them over to the administrator in payment and discharge of his liability as such committee, and the Special Term sustained the report of the referee in that respect. The appellant duly excepted to this part of the report of the referee, and to the decision of the court thereon; and the principal contention on this appeal arises out of that refusal.

Hathaway, when he assumed the duties of committee of the person and estate of the lunatic, by his inventory acknowledged the receipt from his predecessor of $8,257.13. His predecessor, by his account, was charged with that sum as cash on hand, and made no claim that any of that amount was at that time invested in either of the mortgages in controversy here, so that the appellant must be deemed to have voluntarily made these investments himself and not to have accepted those securities as investments made by his predecessor. He had it in his power to compel his predecessor to pay the amount found in his hands in cash, and having received these securities in lieu of cash, he, and not his predecessor, must on this accounting be held liable if the securities received by him were not such as he might receive as an investment of the trust funds committed to his care.

While it is quite apparent from the transactions connected with the making of the Hiram Clark mortgage, that Clark gave the same for the purpose of meeting in part his liability as committee on his accounting, we do not see how that fact alone can prejudice the rights of the appellant, provided that Hathaway had reason to believe, and did believe, that the mortgage was good and adequate security for the amount invested in it. The mortgage was given by Clark to Sowles, who was at that time president of the First

National Bank of Plattsburgh, and who gave Clark his check for $2,500, the amount of such mortgage, Clark indorsing the check to the order of Hathaway, committee, who received the same in part payment of the amount due from Clark as late committee.

That check bore date on the fifteenth of December and was deposited by Hathaway to his credit in the bank, and on the twenty-ninth of January he gave his check for $2,500 to Sowles and received for the same an assignment of the Clark mortgage. There is nothing in this transaction which seems to impugn the good faith of Hathaway in taking the assignment of this mortgage as an investment for the benefit of the trust estate.

He could at any time on his check, after the Sowles check was placed to his credit, have drawn the currency from the bank as committee. Instead of that he saw fit to invest the proceeds of his deposit in the purchase of an interest-bearing security.

This was his duty as committee, provided the security in which such investment was made was reasonably adequate for the amount invested.

The referee, in his thirteenth finding of fact, finds that this Clark mortgage of $2,500 was doubtful security for that amount, and by his fourteenth finding of fact he finds that the same was not taken by Hathaway in entire good faith, and by his conclusion he finds that the lunatic's estate is not bound to take the same, but is entitled to demand cash of the committee for the amount of the same.

Exceptions were duly taken by the committee to such findings and conclusions. The referee in his report refers to the social, business and kinship relations existing between Hiram Clark and the appellant at the time he became the committee of this lunatic, to which the appellant excepted. It is difficult to see the materiality of these facts to the real question under consideration. The real question is, was the mortgage such a security as a prudent business man would take on investing his own funds? The answer to this question would seem under the authorities to measure the responsibility of a committee of the estate of a lunatic. In *King* v. *Talbot* (40 N. Y. 85, 86) the Court of Appeals, in discussing the liability of a trustee, by WOODRUFF, J., says: " My own judgment, after an examination of the subject, and bearing in mind the nature of the office, its importance, and the considerations which alone induce

men of suitable experience, capacity and responsibility to accept its usually thankless burden, is that the just and true rule is that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters employ in their own like affairs. \* \* \* The preservation of the fund and the procurement of a just income therefrom are primary objects of the creation of the trust itself, and are to be primarily regarded."

Adopting the rule as above stated, and applying it to the security under consideration, and eliminating all the extraneous consideration of the relations between the outgoing and incoming committee, and testing this question by an examination of the sufficiency of the security alone, it seems clear that the referee's determination as to the Clark mortgage was erroneous.

The estate of the lunatic has thus far suffered no loss by this investment. The assignor of this mortgage took it as a sufficient security for a loan to Clark of $2,500. He was a business man and president of a bank at the time of making such loan and taking this security. Several apparently competent business men and real estate owners and dealers, acquainted with the real estate covered by this mortgage, and with other real estate located in its vicinity, testified that its value was, at the time of the assignment of this security to the committee, from $3,000 to $4,000. The mortgage bore interest at the legal rate of interest, and contained the interest and insurance clause, and was apparently in every respect a desirable security.

If, under such conditions, the trustee, charged with the duty of keeping trust funds invested on interest, is to be held responsible for payment of the same in cash without recourse to the securities, then the duties and obligations of committees and trustees will become too onerous and risky for ordinary business men, and responsible and competent men will refuse to assume such duties.

It is quite true that trusts for the benefit of the incompetent and infants should be administered with great care and fidelity, and that improvidence or dishonesty on the part of a trustee should be visited with severe condemnation and penalties by the courts.

But when the trust has been administered with fidelity and with prudence and caution that would characterize a prudent business

man in the management of his own affairs, if loss happens it should not be visited upon the trustee.

I am, therefore, clearly of the opinion that the Hiram Clark mortgage was a security in which the committee might, at the time he took the same, lawfully invest the trust funds, and that the administrator of the estate of the lunatic should be required to take the same at its face value with accrued interest, and credit the same to the committee on his account on this final accounting.

A careful examination of the evidence of the Henry Gonyea mortgage leads to the conclusion that that was full and adequate security for the amount of the trust fund invested in it, and that the reasons stated in reference to the Hiram Clark mortgage apply with equal force to the Gonyea mortgage, and that it too should be received by the administrator of the estate of the lunatic and credited to the committee on his accounts.

The referee was right in disallowing the committee's claim for personal services and in his refusal to allow for the payment of interest on the Moon mortgage.

The order appealed from should be so modified as to allow the appellant a credit of $2,500, the amount of the Hiram Clark mortgage and $1,466.50, the amount of the Henry Gonyea mortgage, and that those mortgages, with the bonds accompanying them, be transferred and delivered by the appellant to the administrator of Francis A. Bush, the deceased lunatic, and as so modified the order should be affirmed, without costs of this appeal to either party as against the other.

PUTNAM and HERRICK, JJ., concurred.

Order modified, without costs to either party.