OF THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA

CHARLESTON

WILSON *v.* KENNEDY.

Submitted June 10, 1907.   Decided November 26, 1907.

1. TRUST—*What Constitutes.*

A confidence reposed in one to whom an estate in property is conveyed or set over, that he will permit another to take the profits and enjoy the estate according to terms agreed upon, is a trust.   (p. 7.)

2. SAME—*Equitable Jurisdiction.*

The jurisdiction of courts of equity to enforce performance of trusts arises where property has been conferred upon, and accepted by, one person, on the terms of using it for the benefit of another.   (p. 7.)

3. SAME—*Accounting.*

Courts of equity have jurisdiction over all trusts for the purpose of compelling an accounting, and the existence of any confidential or fiduciary relation is sufficient to invoke such jurisdiction whenever the duty arising out of such relation rests upon one of the parties to render an account to the other.   (p. 7.)

4. EQUITY—*Jurisdiction—Accounting.*

Where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account to the plaintiff, equity will entertain jurisdiction of a suit for an accounting, although the account is neither mutual nor complicated.   (p. 8.)

5.  SAME—*Trust Relation.*

Although it is the trust relation involved in such cases which gives jurisdiction to a court of equity, the relation need not be the strictly technical relation of trustee and *cestui que trust,* a *quasi* trust relation being sufficient.   (p. 8.)

6.  SAME.

Where the relation is such that a confidence is reposed by the principal in his agent, and the matters for which an account is sought are peculiarly in the knowledge of the latter, equity will assume jurisdiction.   (p. 8.)

7.  SAME—*Decree—Vacating.*

A decree entered upon the default of a defendant to answer cannot be set aside during the term at which it was entered, at the instance of such defendant, and he be allowed to file such answer as would delay or continue the suit, unless he shows by affidavit good cause therefor; and such good cause can only appear by showing fraud, accident, mistake, surprise or some adventitious circumstance beyond his control and free from his neglect.   (p. 9.)

8.  SAME.

The good cause demanded to be shown by section 53, chapter 125, of the Code, to justify the delay or continuance of a chancery cause by the coming in of an answer, is such only as appears from a showing of fraud, accident, mistake, surprise or some adventitious circumstance beyond the control of the defendant and free from neglect or fault on his part.   (p. 9.)

Appeal from Circuit Court, Monongalia County.

Bill by Milton Wilson against William W. Kennedy. Decree for plaintiff.   Defendant appeals.

*Affirmed.   Remanded.*

Cox & BAKER, for appellant.

W. S. MEREDITH, for appellee.

ROBINSON, JUDGE:

A farm of about 300 acres, in Clay District, Monongalia County, was conveyed by Milton Wilson and wife to W. W. Kennedy, on the 25th day of March, 1897, in consideration of the sum of fifteen thousand dollars, by deed of general warranty, subject to a lease for oil and gas, which lease was owned by the South Penn Oil Company, and upon which farm at the time of said conveyance there were two produc-

ing oil wells. The deed sets forth that "the grantors convey their interest or royalty in oil and gas with possession from and after April 9th, 1897, and of the residue of the premises from the 1st day of November, 1897." As a part of the transaction of the sale and conveyance of this farm as aforesaid, the said Wilson and Kennedy entered into a written agreement under seal, dated the same day, reciting said conveyance, and stipulating that, in consideration thereof and other valuable considerations, "the said W. W. Kennedy agrees to accept the said conveyance subject to existing lease for oil and to collect the royalty accruing from the sale of the oil made under same from the wells now drilled on said farm or which may be hereafter drilled on any part of said farm and to pay over to said Milton Wilson the one-half part of the money received from the sale of said royalty of oil as produced under said lease."

At August Rules, 1905, in the circuit court of said county, Wilson instituted this suit in equity against Kennedy, and by his bill then filed avers that on and after the 9th day of April, 1897, the South Penn Oil Company began to deliver in the pipe line with which the said two wells were connected, the one-eighth part of all the oil produced and saved from the said two wells to the credit of the defendant; that said oil company has ever since that time delivered and is still delivering unto the defendant the one-eighth of all the oil produced from said two wells; that the defendant has from time to time sold the said oil in the market for large sums of money and has collected the said money; that by virtue of said deed and contract the defendant was and is chargeable with the duty and responsibility of a trustee for the benefit of plaintiff and as such it was and is his duty to sell all of the said royalty of oil, to collect the price therefor, and to pay unto the plaintiff the one-half of the money so received; that notwithstanding such duty of defendant as such trustee, he has constantly and persistently refused to account to or pay unto the plaintiff any part of the money so received, although repeatedly requested by the plaintiff so to do; that plaintiff is not informed how much oil produced as aforesaid has been delivered in the pipe line to the credit of defendant and by him sold as aforesaid, but is informed and so alleges that the same amounts to many thousands of barrels, all

of which defendant has sold from time to time, has received many thousands of dollars therefor, and the one-half of which belongs to plaintiff, for which the defendant long ago should have accounted and paid over; and that the plaintiff has no means of learning how much oil has been so delivered and sold, or how much money defendant has collected from said sales, except through and by information obtained from defendant, which information he has constantly and persistently refused and still doth refuse to give plaintiff. The prayer of plaintiff's bill, is, in substance, that defendant be required to answer and file therewith as part thereof a complete itemized statement of all of said oil, so delivered and sold by him, giving the number of barrels and when the same .was delivered, also a complete itemized statement of all the sales of said oil made by defendant, when the same were made, the number of barrels sold, and the amount of money received therefor; that a decree be entered requiring defendant to pay unto the plaintiff the one-half of all money received by him from said sales of oil, together with its proper interest, and that there be decree against the defendant in favor of the plaintiff for such amount; that the defendant be required at all times in the future when he makes a sale of any of the said oil royalty to make a report thereof to the plaintiff and to pay over to him the one-half of the proceeds thereof, and that general relief be granted in the premises. The bill exhibits the said lease for oil and gas, and the said deed, and recites in full the said contract.

There was no appearance by the defendant at rules and the bill was there regularly taken for confessed. No other order appears in the cause until at April Rules, 1906, when the plaintiff filed an amended bill repeating largely the allegations of the original bill, and praying that it be read as part of the amended bill, and further averring that although process was duly served on defendant he never made any appearance to the original bill and never answered the same; that after the defendant had ample time and opportunity for answering the allegations and requirements thereof, towit, in January, 1906, the defendant (evidently meaning plaintiff) discovered through information obtained from the pipe line company and others the quantity of the royalty oil which had been delivered to the defendant by virtue of the operation of said

two wells; that defendant received to his credit as such royalty from the time he took possession as aforesaid to January 1, 1906, 3232.71 barrels of oil which he sold for the sum of $3,781.66; that the defendant has not accounted to him for any of the money for which he sold said oil and is liable to account to him and pay him in full for his one-half interest in same; that the defendant is and was so constituted by the said deed and contract the trustee to sell the said royalty and account and pay over to him his said interest therein; that defendant should account to the plaintiff for the one-half of the said money for which he sold the oil, together with the interest on the same respectively from the date of each sale; that the interest to May 1, 1906, on the money for which the oil was sold aggregates the sum of $1,344.13; that the amount of said sales together with said interest is $5,125.79; and that plaintiff is entitled to have and receive from the defendant the one-half thereof, towit, the sum of $2,562.89. This amended bill then prays for a consideration of the prayer of the original bill, that the defendant be required to answer both the original and amended bills, that a decree be entered requiring the defendant to pay the said sum to plaintiff, shown to be due as aforesaid, and for general relief.

There was no appearance at rules to the amended bill, but on the 19th day of May, 1906, the defendant appeared in court, by counsel, and demurred to the original and amended bills, which demurrer was joined in by plaintiff, and after argument and consideration was overruled, and on motion of the defendant, he was granted leave to file his answer to said bills in the clerk's office of said court within thirty days. No answer was filed by defendant in the time given him as aforesaid, or further appearance made by him, and on the 6th day of September, 1906, the court entered a decree granting the prayers of the plaintiff's bills, and decreeing that the defendant pay unto the plaintiff, and that the plaintiff recover against the defendant, the sum of $2,600.71, with interest thereon from the 3rd day of September, 1906, and the costs.

On the 24th day of September, 1906, the defendant appeared by counsel, and asked that the said decree, entered at a former day of that term, be set aside, and that he be permit-

ted to answer and make defense, and tendered and offered to file his answer, with which there was exhibited the affidavit of a physician. But the court, reciting in its order that it appears that the process commencing this suit was served upon the defendant in person on the 25th day of July, 1905, and the bill filed at August Rules, 1905, that the process on the amended bill was served on the 28th day of March, 1906, and the amended bill filed at April Rules, 1906, that at the May term, 1906, there was a demurrer overruled and defendant given thirty days to file an answer in the clerk's office and no such answer was tendered or filed, and that final decree was made and entered in the cause on the 6th day of September, 1906, upon consideration of the motions, the answer tendered, the affidavit and the record of the cause, being of opinion that good cause was not shown, refused to set aside said decree and grant defendant's motions.

The answer tendered as aforesaid admits the arrangement and agreement between plaintiff and defendant relative to the royalty oil, and by inference admits the selling of the oil as alleged in the bills, but denies that no payments have been made to plaintiff on account of his interest in the oil, and alleges that defendant has made plaintiff various payments therein alleged and for which it is insisted credit should be given. It denies the allegations of the bill, so far as not expressly admitted, and calls for strict proof thereof, and avers that the allegations of the bills are grossly wrong in claiming the amount which plaintiff demands, and that defendant will be defrauded out of hundreds of dollars if he is not permitted to file his answer in this cause setting up the payments he has made plaintiff on account of the oil sold by respondent. The answer then alleges that "respondent has been sick for many months with a dangerous disease and has not been able to get to Morgantown, and being advanced in years he has been unable to present his defense in this case until this time." The affidavit of the physician, dated September 22d, 1906, shows that he has been attending defendant and he "has been suffering with a dangerous disease and has been for several months, and that upon his advice he has remained at home, and in his opinion it has not been safe for the said Kennedy to travel about;" that in the opinion of the physician it would have been dangerous for the defendant to

have gone to Morgantown "until the last few days next preceding the making of this affidavit;" that defendant is suffering from a severe hurt from a log rolling over him, which has brought on valvular trouble of the heart, "which at times gives him a good deal of trouble, keeps him at home a good deal of the time;" and that he has been "dangerously sick and unable to attend court until within the last few days." The respondent avers that he is willing and anxious to pay the principal and interest of any balance that may be found due to plaintiff, and prays a reference to a commissioner to ascertain the correct amount due on a fair settlement between him and the plaintiff. The answer is verified by the oath of the defendant.

It is insisted, first, that the court erred in overruling the demurrer to the original and amended bills, and the defendant submits that the suit is simply one for the recovery of a legal demand, and that plaintiff has a full, complete and adequate remedy at law. It is argued that since the amended bill alleges the amount due to plaintiff from defendant the suit ceases to be one for discovery and relief as made by the original bill, and, the necessity of a discovery having disappeared, the suit cannot stand for the mere relief for the recovery of the claim. We are not called upon to discuss whether it can so stand, since an inspection of the original bill, and which has become a part of the amended bill, shows it to be founded upon good ground of conceded equity cognizance, regardless of the discovery asked. By the deed aforesaid the legal title to the oil was vested in the defendant, subject to the lease, and by said contract it expressly appears that defendant recognized the plaintiff's equitable title to one-half of the royalty oil. This makes the defendant a trustee for plaintiff, holding the legal title for him. The making of a trust may be embraced in more than one paper. *McCandless* v. *Warner*, 26 W. Va. 754. By the words of the contract, one of the papers by which this trust was created, the defendant "agrees to accept said conveyance subject to existing lease for oil and to collect the royalty," and to pay one-half thereof to plaintiff; that is, to hold the legal title, and to collect and pay over the royalty for another. This is exactly similar to the many pure trusts that we observe daily in the transactions of men. It comes plainly within the

definitions. Underhill on Trusts and Trustees, Amer. Ed., pages 1-5. A confidence reposed in one to whom an estate in property is conveyed or set over, that he will permit another to take the profits and enjoy the estate according to terms agreed upon, is clearly a trust. 2 Tucker's Comm. 430. A trust has been defined to be "an equitable right, title or interest in property real or personal, distinct from the legal ownership thereof. In other words, the legal owner, holds the direct and absolute dominion over the property in the view of the law, but the income, profits or benefits thereof in his hands belong wholly or in part to others." 2 Story's Eq. Jur., sec. 964. In the case under consideration, Kennedy holds the legal title to the oil and the direct and absolute dominion over it, but by the contract made between the parties a part of the income, profits and benefits thereof in his hands belong to Wilson. This is a trust, pure and simple, and because of such trust, to say nothing of the alleged necessity for a discovery, equity has jurisdition of the matters set forth in the bill. "The jurisdiction to enforce performance of trusts arises where property has been conferred upon, and accepted by, one person, on the terms of using it for the benefit of another." Adams' Equity, 26. This case being one for an accounting under a trust, it is peculiarly under the jurisdiction of equity. "Courts of equity have jurisdiction over all trusts for the purpose of compelling an accounting, and the existence of any confidential or fiduciary relation is sufficient to invoke such jurisdiction whenever the duty arising out of such relation rests upon one of the parties to render an account to the other. 1 Cyc. 427, and the cases there cited.

Did we not hold the relation of the parties to be one of pure trust, no one will deny that the relation of the defendant to plaintiff was such as to make him at least the agent of the plaintiff for the purpose of selling the oil and accounting to plaintiff therefor, and such being true, under the allegations of plaintiff's bills equity has jurisdiction of the suit. In Adams' Equity, 220-221, it is announced: "One important instance of the jurisdiction over accounts occurs in the case of trustee and *cestui que trust*, where the *cestui que trust* demands an account of moneys received under the trust. The equity of this particular case is included under

the general equity for enforcement of trust, but a corresponding one exists as against an agent or steward, or a person employed in any similar character, who is bound by his office to render regular accounts." In the same connection, the author says that if such duty is performed and the accounts are regularly rendered, his employer can recover the balance at law on the evidence of the accounts themselves, and resort to a suit in equity is not required; but if it is neglected, the employer "will also have an equity, arising out of the agent's failure in duty, to have the accounts taken in the court of chancery where the evidence may be supplied by discovery on oath." And he further says: "It will be observed that this equity does not originate in the mere want of discovery, * * * * but in the additional ingredient that such want has been caused by the defendant's fault." This doctrine is perhaps more tersely vouched for in 6 Pomeroy Eq. Jur., at sections 931 and 932: "Where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account to the plaintiff, equity will entertain jurisdiction of a suit for an accounting, although the account is neither mutual nor complicated. The most common of such cases are those involving trustees, guardians, executors and administrators, partners, agents, and co-tenants. Although it is the trust relation involved in such cases which gives jurisdiction to a court of equity, the relation need not be the strictly technical relation of trustee and *cestui que trust*, a *quasi* trust relation being sufficient;" and "where the relation is such that a confidence is reposed by the principal in his agent, and the matters for which an account is sought are peculiarly in the knowledge of the latter, equity will assume jurisdiction." These principles have received apt recognition in the Virginias. *Berkshire* v. *Evans*, 4 Leigh 223; *Zetelle* v. *Myers*, 19 Grat. 62; *Coffman* v. *Langston*, 21 Grat. 269; *Thornton* v. *Thornton*, 31 Grat. 212; *Vilwig* v. *B. & O. R. R. Co.*, 79 Va. 449; *Bank* v. *Jeffries*, 21 W. Va. 504.

In the light of the foregoing, it is readily observed that either of the bills of plaintiff, the original or amended, presents matter of well-founded equity jurisdiction, and that the demurrer was most properly overruled.

Was the defendant entitled to have the decree set aside, his answer filed, and thereby be admitted to make defense,

after his failure to appear to the original bill and the same as to him taken for confessed, and after his failure to answer the original and amended bills within the thirty days given him for that purpose, and his tendering no answer until eighteen days after entry of the decree?

The question itself does not speak well for defendant, reciting as it does his disregard of the process of the court and his continued delay in presenting his defense. His confession of the truth of plaintiff's bills by his silence until after the law had pronounced, in its ever direct and certain course, judgment upon such confession, puts upon him the burden of purging himself from the intention which the law understands and accepts by his silence. It is no slight thing to trifle with the process of the law, and those who are not impressed with the certainty, dignity and power of our courts upon defined principles, taught by the experience of the ages to be for the welfare of the community as a whole, may well become examples for the furtherance of a recognition of that certainty, dignity and power, since a loss to the individual by his own disobedience is not to be considered in comparison with the importance of the maintenance of a sound jurisprudence. Therefore, where one, called upon by the sovereignty under which he lives and which affords him protection from violation of his rights, to say what he may in answer to allegations made against him by another, remains silent during the time that is fixed and published for one and all to answer, and the judgment of the law is pronounced against him upon the confession by his silence, he must come with no slight excuse if he is to be then heard. Mere apology or penitence will not do; to give ear to them would encourage delay and uncertainty. He must show that he did not intend to be silent, and that his silence has been caused by things beyond his power to prevent. He must clearly take his case out of the rule.

It is true that the decree which defendant moved to set aside, while final in character, was not final in relation to time, the term at which it was entered not having closed. During the term it was completely under the control of the court and could have been modified or wholly set aside. *Kelty* v. *High*, 29 W. Va. 381, and other cases. But it could only be set aside for good cause shown, and what is

sufficient cause therefor is a matter in the sound discretion of the court. *Mathews* v. *Tyree*, 53 W. Va. 298. And our statute, section 53, chapter 125, of the Code, provides: "At any time before final decree, a defendant may file his answer, but a cause shall not be sent to the rules or continued because an answer is filed in it, unless good cause be shown by affidavit, filed with the papers therefor." This statute virtually means that the filing of an answer in a chancery cause shall not work delay or continuance unless defendant shows by affidavit good cause to excuse the tardiness of his answer. Its apparent object is to prevent delay or dilatory action in the course of chancery proceedings, at the same time giving the right to defendant to be heard even to the very hour of final decree, provided his answer does not delay the progress of the suit, or he shows by affidavit good cause for a continuance. The rule that the decree could not be set aside without good cause shown, and the purpose and force of this statute go well in hand in the case we are now considering. The defendant was not only asking that the solemn decree of the court be set aside, but that he be permitted to file his answer, putting the plaintiff to proof, and working a delay or continuance. To have either one or both done, he must show such cause as the court in the exercise of a sound judicial discretion, governed by established principles, can say is good; and that good cause can only appear by showing fraud, accident, mistake, surprise or some adventitious circumstance beyond his control and free from his neglect. *Post* v. *Carr*, 42 W. Va. 72.

The statute we have quoted is clearly akin to section 47 of the same chapter, relating to the opening of default judgment in an action at law. Their purposes are the same, one to prevent dilatoriness and uncertainty in law actions, and the other to prevent same in chancery suits. Section 47 provides for the filing of plea and counter-affidavit before the end of the term at which the office judgment would become final, and then says "if the judgment had been entered up in court or the order for an inquiry of damages has been executed, it shall not be set aside without good cause be shown therefor. Any such issue may be tried at the same term, unless the defendant show by affidavit, filed with the papers, good cause for a continuance." Section 53, says, in effect, that while

one may come in with an answer, analogous to plea and counter-affidavit in the other section, at the term when there is about to be final decree against him by reason of the tardiness of his answer, yet similarly to the last clause above quoted, the chancery cause shall not be delayed or continued thereby, "unless good cause be shown by affidavit, filed with the papers therefor." Note the similarity of these statutes, not only in words but in purpose. Mr. Minor recognizes this similarity. Institutes, 3rd Ed., vol. 4, 1348. By neither of them can there be a continuance, caused by such appearance, unless for good cause shown by affidavit. Each of them in express terms so states. By one of them, in express terms, if the judgment has been entered up it can only be set aside for good cause shown; and by the other, by implication, if the decree has actually been entered, as in the case before us, it cannot be set aside for the purpose of an answer which would delay or continue the suit, without good cause shown. There is no rule by which we can construe good cause in one of these sections to be different from that meant in the other. We must therefore say that the good cause required in section 53 is the same as that required in section 47, which has been held, in the case last cited, to be fraud, accident, mistake, surprise, or some adventitious circumstance beyond the control of the party and free from his neglect. To any of these causes courts of equity are never closed, but they turn deaf ears to neglect and *laches*.

Did the defendant show such good cause by his sworn answer and the affidavit of his physician? This question was peculiarly for the court below, and while its action in relation thereto may be reviewed here, yet the finding and order of the lower court thereon will not be disturbed unless there appears a plain abuse of sound judicial discretion as guided by established rules and precedents. *Welch* v. *County Court*, 29 W. Va. 63. We find no such abuse. In reading the answer and affidavit, there is not disclosed any definite showing, sufficient to excuse the defendant for not getting his answer prepared and filed in time. His failure to appear for any purpose for several months, is a circumstance evidencing gross tardiness, such as he also practiced after appearance and demurrer overruled. The facts set forth in relation to sickness are not of the defined character to show a total

prevention of action on his part. He has been sick "several months," but nothing shows that this sickness existed over the whole period in which he was in default, and in fact it is so told us by him and the physician as to show that he was not so totally disabled as to be prevented from attending his defense. The doctor says he advised him to stay at home, but it is not stated that he was unable to prepare his defense at home. The contrary in fact is shown, for the doctor says that he was suffering from a hurt which brought on heart trouble, "which at times gives him a good deal of trouble, keeps him at home a good deal of the time." Here in this statement it is implied that there were times when the trouble did not effect him, and when he was not kept at home. In these times he should have prepared to prevent the decree of the court, which he knew was being sought against him. The fact that he could not get to the county-seat does not excuse him, particularly in this era of rapid rural mails and telephones. His personal presence in court was not essential for the mere filing of an answer. The character of the answer which he tenders is such as is readily prepared by counsel upon information given by correspondence. It shows no complications. He need only have written counsel what payments he had made Wilson, and for which he should be credited. Upon this information the answer could have been prepared and filed without his presence. The bills were not sworn to and the answer need not have been even delayed, or carried, for affidavit. While the answer tendered alleges payments to plaintiff, it has no probative force as to these, and no proofs are exhibited. The one exhibited check on its face does not show on what account payment was made by it. Had the answer exhibited absolute proofs of payment on plaintiff's claim, a stronger cause for setting aside the decree would be made, but indeed this of itself would not be sufficient cause. Upon the whole record, we are unable to observe such cause as should set aside the decree and work a continuance.

We are not unmindful of the earnest appeal made in the answer of this defendant, but if actual loss occurs to him in the premises, he cannot in fairness blame the regularity and exactions of the law to which all are subject. It is chargeable to his own neglect. We cannot depart from the course

of equal justice to favor the individual, as we are here asked to do, for to do so, " 'twill be recorded for a precedent; and many an error, by the same example, will rush into the state."

There is no error and the decrees are affirmed; and it appearing that this cause has been retained on the docket of the circuit court for other and further proceedings, it is accordingly remanded thereto.

*Affirmed. Remanded.*