In the Matter of the Application of MILES F. MCDONALD to Render and Settle His Final Account as Committee of HUGO MICHAELSON, an Incompetent.

Supreme Court, Special Term, Kings County, May 11, 1937.

*Gross & Keck* [*Fred L. Gross* of counsel], for Miles F. McDonald, as committee, etc.

*Hauptman & Hauptman* and *Schutte & Hegeman* [*S. A. Hauptman* and *Harry H. Schutte* of counsel; *Nathan Hauptman* with them on the brief], for the administrators, etc., of Hugo Michaelson, objectants.

BROWER, J. This is a proceeding to settle the account of the committee of Hugo Michaelson, an incompetent United States war veteran, now deceased. The committee was appointed and qualified in July 1929. The incompetent died July 14, 1936, and Fred Michaelson and Harry H. Schutte were thereupon appointed administrators of the incompetent's estate and have filed objections to the account which now come on to be heard.

Schedule E of the committee's final account, entitled "Investments made by the committee," contains, among others, the following items:

1. 12/17/29 — participating certificate No. 777 in first mortgage covering Printing Crafts Building, guaranteed by the Prudence Company............................ $4,000

2. 1/12/31 — participating certificate No. 1004 in mortgage covering premises 101–110 Central Park West, New York city, guaranteed by the Prudence Company... 1,500

3. 1/12/31 — participating certificate No. 186 in first mortgage covering premises 9 Prospect Park West, Brooklyn, N. Y., guaranteed by New York Title and Mortgage Company................................ 500

4. 1/1/32 (corrected to 11/9/31) — participating certificate No. 481 in guaranteed first mortgage covering premises 31 West Seventy-second street, New York city, guaranteed by Prudence Company.................... 4,000

5. 8/26/31 — certificate No. 38, New York Title and Mortgage Company, Series B/N..................... 2,500

Total...................................... $12,500

Objections are directed to such investments upon the following grounds:

" (a) that said investments and said guaranteed mortgage certificates and mortgages do not represent investments of the character permitted for the investment of the said Incompetent's funds under Sec. 1384-1 of the Civil Practice Act, and are, therefore, improper and illegal for the investment of said funds;

" (b) that no due and timely leave of this Court was obtained by the said Committee authorizing him to make the aforesaid investments;

" (c) that the investment of practically the entire estate of the said incompetent in this single form of security was improvident and unwarranted."

Of the facts agreed upon, the following are material in reaching my conclusions:

" That no orders authorizing said investments were entered prior to the purchase by the committee of the aforesaid certificates; that subsequent to the purchase thereof, orders were made purporting to ratify the respective investments, which orders were obtained after notice to the United States Veterans' Bureau and the Attorney General; that all of said investments were in guar-

anteed participating certificates on entire first mortgages on improved real property in New York City, excepting that New York Title and Mortgage Company certificates #38, Series B-N, was a guaranteed participating certificate in a group series of mortgages.

" That no objection is raised as to the value of the underlying properties covered by any of the aforesaid investments.

" That all of the acts of the Committee were in good faith and as he then believed to be to the best interests of this estate. That all of the investments made by him were represented to him to be legal investments for committees of incompetent veterans, and it was the general understanding of fiduciaries, both executors and trustees, guardians, committees, etc., that the said certificates were legal investments for trust funds."

The question presented is one of law. Do investments made by a committee of a ward of the United States Veterans' Bureau of moneys received by him from the bureau and all earnings, interest and profits derived therefrom, in guaranteed first mortgage participation certificates in a single mortgage or certificates in a group of mortgages, constitute a legal investment for such funds?

Effective on July 1, 1929, chapter 340 of the Laws of 1929 enacted article 81-A of the Civil Practice Act, providing a procedure to be followed in the case of incompetent veterans and infant wards of the United States Veterans Bureau. Section 1384-1 of said article provides: " Every guardian shall invest the funds of the estate in the same kind of securities as those in which the savings banks of this State are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon."

The Constitution of the State of New York adopted in 1894 continues the Supreme Court with general jurisdiction in law and in equity (Art. VI, § 1), which preserves the jurisdiction over lunatics and their property which was originally vested in the chancellor and the Court of Chancery, and was subsequently transferred to the old Supreme Court as it existed prior to the adoption of the Constitution of 1846. That jurisdiction, however, as to the manner of its exercise, may be regulated by the Legislature, and when this has not been done it is to be exercised according to the established practice of the Court of Chancery. (*Matter of Andrews*, 192 N. Y. 514.)

In the manner of the exercise of this jurisdiction in so far as the investment of funds of incompetents was concerned, the Supreme

Court applied the same standard as governed trustees — the rule, laid down in *King* v. *Talbot* (40 N. Y. 76, 85, 86), " that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs." No distinction was made or different standard laid down because the fiduciary happened to be called a committee rather than an executor or administrator or trustee. (See *Matter of Hathaway*, 80 Hun, 186; *Butler* v. *Jarvis*, 51 id. 248.)

Chapter 65 of the Laws of 1889 was the first statute enacted in this State regulating investment of trust funds and authorized investment in specific named securities. This statute was incorporated without substantial change as section 9 of the Personal Property Law of 1897 (Laws of 1897, chap. 417). Commencing with an amendment to this section made by chapter 295 of the Laws of 1902, there followed a gradual expansion and development of the section and its successors and related statutes. The securities in which investment was authorized were enumerated and defined with meticulous care and surrounded by stringent requirements. Thus over a long period of years there was evolved a body of statutory law relating to the investment of trust funds of all kinds, modified and extended from time to time to meet changing conditions and, as experience dictated the wisdom of new or different provisions; until in the years 1929 to 1931, when the investments here complained of were made, section 111 of the Decedent Estate Law (and section 21 of the Personal Property Law was the same save for the omission of the words " executor " and " administrator " in the first line) read as follows, in so far as it related to mortgage investments: " An executor, administrator, trustee *or other person holding trust funds* for investment may invest the same * * * in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon, and in shares or parts of such bonds and mortgages, provided that any share or part of such bond and mortgage so held shall not be subordinate to any other shares thereof and shall not be subject to any prior interest therein, and provided further that bonds and mortgages in parts of which any fiduciary may invest trust funds together with any guaranties of payment, insurance policies and other instruments and evidences of title relating thereto shall be held for the benefit of such fiduciary and of any other persons interested in such bonds or mortgages by a trust company, a bank authorized to conduct a trust department or title guaranty corporation organized under the laws of this State, or a national bank located in this State and duly authorized to act as a trustee

therein, and that a certificate setting forth that such corporation holds such instruments for the benefit of such fiduciary and of any other persons who may be interested in such bond and mortgage among whom the corporation holding such instruments may be included, be executed by such corporation and delivered to each person who becomes interested in such bond and mortgage. Every corporation issuing any such certificate shall keep a record in proper books of account of all certificates issued pursuant to the foregoing provisions. An executor, administrator, trustee or other person holding trust funds may require such personal bonds or guaranties of payment to accompany investments as may seem prudent, and all premiums paid on such guaranties may be charged to or paid out of income, providing that such charge or payment be not more than at the rate of one-half of one per centum per annum on the par value of such investments. But no trustee shall purchase securities hereunder from himself." (Laws of 1928, chap. 362. Italics the court's.)

The primary purpose of these several enactments was to protect, safeguard and prevent the dissipation through improvident investment of property held by individuals and corporations which was not their own and to which a duty to account attached, and this whether the individual or corporation was called executor, administrator, guardian or committee. Thus prior to the enactment of article 81-A the duties of committees, whether of veterans or non-veterans, in the investment of moneys held in their custody required of them the basic obligation to act with prudence, then to select an investment such as the Legislature had described and enumerated, and then according to the practice as originally vested in the chancellor to apply to the court upon a full statement of facts regarding the investment and await its approval.

Article 81-A of the Civil Practice Act is an outgrowth of Federal legislation on the subject of veterans. Congress passed an act in June, 1924 (U. S. Code, tit. 38, §§ 421-683), designated as the "World War Veterans' Act, 1924," "to provide a system for the relief of persons who were disabled, and for the dependents of those who died as a result of disability suffered in the military service of the United States between April 6, 1917, and July 2, 1921." To administer this system, the act in section 425 originally established an independent bureau under the President, to be known as the United States Veterans' Bureau, the director of which was to be appointed by the President, and by section 426 it gave the director, subject to the general jurisdiction of the President, authority to administer, execute and enforce the provisions of the act, and, for that purpose, to make rules and regulations necessary or appro-

priate·to carry out its provisions. By section 450 it provided that where any payment was to be made to a person mentally incompetent, " such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the State of residence of claimant, or is otherwise legally vested with the care of the claimant or his estate."

It would often happen in the nature of things that a beneficiary who was incompetent was without a guardian or any one legally vested with the care of his person or estate, because he had no estate to be cared for and his condition was not such as to require that he be kept under restraint; and that such a one and his friends would wish to avoid the expense and unpleasant notoriety of the ordinary inquiry by a jury as to his sanity; and out of this situation there grew a demand for legislation by the States. Accordingly the Commissioners on Uniform State Laws proposed an act, to be known as the Uniform Veterans' Guardianship Act, and recommended its enactment by the various States. New York was among the States which adopted it, and it now appears as article 81-A of the Civil Practice Act. The act was probably designed chiefly to provide a simple and inexpensive procedure to enable the unfortunate beneficiaries of the act of Congress who are mentally incompetent to receive the benefits allowed without having to be adjudicated incompetent by a jury; and in addition thereto and in harmony with this fundamental purpose, certain other procedure peculiarly appropriate to veterans was adopted, such as the filing with and auditing by the Veterans' Bureau of the accounts of committees and making the Bureau a party to the proceedings.

The act as adopted in New York is substantially in the words proposed by the National Conference of Commissioners on Uniform State Laws and by it recommended for enactment. However, section 12 of the Uniform Act, as proposed, read as follows:

" § 12. Every guardian shall invest the funds of the estate in such manner or in such securities, in which the guardian has no interest, as allowed by law or approved by the court."

As enacted by the State of New York this section provides:

" § 1384-l. Investment by guardians. Every guardian shall invest the funds of the estate in the same kind of securities as those in which savings banks of this State are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon."

To determine whether the language used by the Legislature in describing lawful investment of funds received by the committee

from the Veterans' Bureau and all earnings, interest and profits derived therefrom was intended to include investments in mortgage certificates such as those shown by the account under consideration, we must read the statute in the light of its history and the conditions prevailing when it was adopted. We must also consider the construction which the courts, the Bureau intrusted with the administration of the funds, and the general public placed upon the statute prior to the time when the committee made the investments. (*Matter of Stupack*, 274 N. Y. 198.)

If the Legislature deemed it advisable and prudent to restrict the investment of such funds (only moneys received by the committee from the Veterans' Bureau and all earnings, interest and profits derived therefrom [Civ. Prac. Act, § 1384-a]) to investments in whole mortgages, the reason is not apparent. No facts appear indicating that at the time of the enactment a condition existed which would require a departure from that careful and studiously developed scheme to protect and preserve all other funds held in trust, including moneys held by committees of civilians and moneys other than those received from the Veterans' Bureau and the earnings, interest and profits derived therefrom, held by committees of veterans.

The sponsors of the legislation, upon whom the responsibility rested, requested that in the investment of such funds the committee be limited to such as were allowed by law and approved by the court. I see no reason to believe that it was the intention of the Legislature to provide a more restricted form of investment than that which was requested. If we read section 1384-l literally we find committees of veterans now clothed with a power to make investment in certain prescribed securities, and that without the approval of the court — contrary to the ancient practice.

In *Matter of Garmes* (159 Misc. 470) I had under consideration certain provisions of article 81-A, and I there held that " the provisions of said article are not a repeal of or a substitute for the basic or statutory law of this State relating to incompetents, but are to be read in conjunction with article 81 of the Civil Practice Act (§ 1356 *et seq.*), and any other pertinent provisions of law relating to incompetents." (Dec. Est. Law, § 111, and Pers. Prop. Law, § 21.) Unless, therefore, we find in the language of section 1384-l words which would specifically prohibit the investment by such committees in parts or shares of bonds and mortgages, there is nothing inconsistent between this section and the provisions of section 111 of the Decedent Estate Law and section 21 of the Personal Property Law as they read at the time the committee made the investments here objected to. Section 1384-l does

employ the words " shall invest," but I think they are to be given the same value as the words " may invest " as used in sections 111 and 21.

To overturn a long-established rule of law, the intention of the Legislature must be " expressed with the clearness which the importance of the subject demands, or so that its meaning is unmistakable. In the effort to discover the exact intention of a statute claimed to effect such a change, the history of legislation upon the subject will be carefully examined and all the statutes affecting it read together. Construction will not be based on a single section, which, when read by itself, appears to overturn a well-established principle of the common law, but that section will be read in connection with all the commands of the Legislature relating to the matter and the intention thus gathered from its command as a whole." (Seligman v. Friedlander, 199 N. Y. 373, 376.) Several statutes relating to one subject may be considered as governed by one spirit and policy, framed upon one system with one object in view.

The Supreme Court upon many occasions has construed section 1384-l, when read in conjunction with other pertinent provisions of law relating to incompetents, as permitting investment by committees of incompetent veterans in parts or shares of bonds and mortgages. The files of this court reveal that its several judges from the date of the enactment had made orders directing committees of veterans to invest in parts or shares of bonds and mortgages. The Veterans' Bureau, a body responsible for the supervision of investment of benefits received from the Bureau, has taken the position and construed the section under examination as permitting committees of incompetent veterans to invest the funds in their custody in parts or shares of bonds and mortgages, as is evidenced by the many orders which examination discloses are to be found in the files of this court where the application for a direction to the committee to invest in such securities was made by the Veterans' Bureau. The case at bar is one where the specific investments were approved by this court, after notice to and without objection on the part of the Veterans' Bureau. Further, as appears from the stipulation of facts by the parties to this proceeding, it was the general understanding of fiduciaries, including executors and trustees, guardians, committees, etc., that the said certificates were lawful investments for trust funds.

This committee upon assuming office was required by section 1384-h of the Civil Practice Act to furnish a bond the conditions of which " shall be that the committee will in all things faithfully discharge the trust imposed upon him or them, obey all directions

of the court in regard to the trust, make and render a just and true account of all moneys and other properties received by h'm or them and the application thereof and of his or their acts in the administration of his or their trust, whenever so required to do by the court." (Civ. Prac. Act, § 1375.)

Administrators, trustees and guardians are also required to furnish a bond, and the obligations assumed in such bonds are, as to the duties required, the same as found in the bond furnished by this committee.

> " So Romeo would, were he not Romeo called,
> Retain that dear perfection which he owes,
> Without that title."
> *(Shakespeare: Romeo and Juliet, Act II, sc. 1.)*

Motion granted. All objections will be overruled and the accounts of the committee judicially settled and allowed as filed. Settle order on notice.