PAUL J. DAVIS, *Committee, v.* ERNEST SEE *et al.*

(No. 8569)

Submitted October 19, 1937.  Decided December 7, 1937.

*H. G. Shores* and *Lively & Lively,* for appellant.
*Ernest A. See* and *Emory Tyler,* for appellees.

FOX, JUDGE:

Paul J. Davis, committee for John Knight, an insane person, instituted this suit in equity in the Circuit Court of Mineral County, seeking an accounting from Ernest A. See, a former committee for said Knight, as to the funds which went into his hands as such. In his bill, two specific items on which an accounting was sought were set up: (1) An item of $3,971.20 found to be due from See to his ward's estate by a decree entered by said Circuit Court, on the 27th of July, 1933, and ordered to be paid or replaced on or before October 1, 1933; and (2) the sum of $4010.20, representing the amount paid for four notes of $1,000.00 each, executed by Caleb J. White and Mabel A. White to the Huffman Fruit Company, Inc., which the said See, as committee, purchased from the payee, under the assumed authority of an order of said Circuit Court, entered on the 29th day of August, 1931, but which order, the plaintiff avers, was violated by See. The bill does not allege a loss on account of the purchase of said notes. The claim of the plaintiff is based on the contention that the alleged violation of the court's order with respect to the purchase of said notes created a liability on See, and the surety on his bond as committee, for the total amount paid therefor.

The cause was finally heard upon the report of a commissioner. The Circuit Court found that on the claim of $3,971.20, See was indebted to the plaintiff in the sum of $20.89, which amount was paid prior to the actual entry of the decree giving effect to the court's ruling. As to the item of $4,010.20, based on the Caleb J. White notes, the court relieved See and the surety on his official bond from all liability therefor, basing such action upon the following grounds: (1) No loss was clearly and satisfactorily shown; (2) no bad faith or carelessness that could be construed as negligence imposing liability had been shown; (3) little or no effort had been made by See's successor to collect the White notes, although possibility of some recovery thereon was shown by the evidence; and (4) the said White notes were accepted by the plaintiff without protest and had been held by him without positive action.

From this decree the plaintiff prosecutes this appeal.

We see no reason to disturb the action of the court below with respect to the item of $3,971.20, and therefore affirm the same. The small sum found due having been paid, and the matter of costs involved controlled by our decision on other points raised on the record, there is no occasion to further consider that part of the decree.

No question is raised as to the right of the plaintiff to demand and receive from the former committee an accounting of the estate in his hands, and to maintain a proper suit or action to enforce the same. That such right is clearly vested in the plaintiff under Code, 27-9-4, has been held by this court in *Straight* v. *Ice,* 56 W. Va. 60, 48 S. E. 837. But the defendant, See, by his demurrer to the bill, raises the question of the jurisdiction of a court of equity to entertain a suit of this character, where, as he avers, there is an adequate and complete remedy at law. Waiving the question of whether or not, upon the situation developed by the record, the proceedings open to the plaintiff, under the statute, to secure an accounting and the right to sue at law to recover any amount found to be due furnishes complete and adequate relief, we have not understood that such remedy excludes the long established jurisdiction of courts of equity to enforce

accountings by fiduciaries of estates in their hands for administration and settlement. The power of courts of equity with relation to trust funds in the hands of fiduciaries, which must necessarily include committees for the estates of insane persons, is illustrated by the following authorities. 3 Pomeroy, Equity Juris., section 1097; 5, *idem*, section 2358; *Pratt* v. *Wright*, 13 Gratt. (Va.) 175; *Barnum* v. *Frost's Admr.*, 17 Gratt. (58 Va.) 398; *Cole* v. *Cole's Admr.*, 28 Gratt (69 Va.), 365; *Merchants' Bank* v. *Jefferies*, 21 W .Va. 504; *Wilson* v. *Kennedy*, 63 W. Va. 1, 59 S. E. 736; *Chapman* v. *American Surety Co.*, 261 Ill., 594, 104 N. E. 247. Another point of demurrer that no loss was specifically alleged is without merit for the reason that, independently of any loss which might ultimately be shown, the plaintiff had a right to an accounting to determine the value of the assets transferred to him, and for which he will have to account. He is entitled to the protection of a decree of a court as to that value. He was not required to accept the *ex parte* statements filed by See, in which he assumes to give detailed statements of his transactions as committee, subsequent to the date of his last settlement, and up to the time when he ceased to act as such. The record shows that See was removed as committee on the 2nd day of November, 1933, and that the plaintiff's appointment as such was made on the 18th day of April, 1934. The other points of demurrer, in view of the nature of the case, do not call for comment, and the demurrer, as a whole, was properly overruled.

In considering the question of whether or not See is liable on account of the transaction by which he purchased the Caleb J. White notes, a study of the background leading up to the purchase of said notes is required. It appears from the record that one J. R. Hayden was the owner of a tract of 266 acres of land, situated in Mineral County, and that in 1929 he conveyed the same to T. T. Huffman, Jr., and Fred N. Huffman for an actual consideration of $10,000.00, evidenced by five notes for $2,-000.00 each, secured by a deed of trust, and that said notes were by Hayden placed with the District National Bank of Washington, District of Columbia, as collateral

494

on a loan made by said bank to Hayden; that in 1930, the Huffmans conveyed 144 acres of said land to Harry C. Stouffer, who assumed the payment of four of the $2,-000.00 notes held by Hayden; that in 1931, the Huffman Fruit Company, a corporation, successor to the Huffmans in the remaining 122 acres, sold 104 acres thereof to Caleb J. White in exchange for certain property in the State of Maryland and a cash payment of $600.00, but leaving unpaid of the consideration the sum of $4,000.00, represented by four notes of $1,000.00 each, dated March 14, 1931, payable to the Huffman Fruit Company in one, two, three and four years, with interest, and secured by a deed of trust on the 104 acres of land so conveyed to said White, which deed of trust was, of course, subject in priority to that covering the entire tract of 266 acres.

The Huffman Fruit Company being still indebted to Hayden in the sum of $2,000.00, even should Stouffer pay the notes assumed by him, and being desirous of liquidating said indebtedness, proposed to the said Ernest A. See, committee for John Knight, that he purchase from it the four notes executed by Caleb J. White. T. T. Huffman, Sr., who acted on behalf of the Huffman Fruit Company, represented to See that Hayden, in consideration of the payment of $2,000.00, would release the 104 acres of land from the deed of trust securing the five notes which had been executed to him, representing purchase money for the 266 acres. It is shown that Huffman understood that Hayden had executed a release and had placed the same in escrow with the District National Bank in Washington, to be delivered upon the payment of $2,000.00, and that he communicated this understanding to See. The matter progressed to the point where See, as committee, filed a petition in the Circuit Court of Mineral County, seeking authority to purchase the White notes, and upon that petition, after a full hearing, the purchase of the notes was authorized by the court. At that time all of the parties to the transaction believed that in the purchase of these notes they were securing a first lien upon the 104 acres. A decree of the court, in effect, approved the purchase of the notes on condition that a first lien upon the 104 acres of land be obtained. The language

used by the court with reference to this condition was: "and the release of the two thousand dollar ($2,000.00) deed of trust on said real estate hereby making this loan a first lien on said real estate." Following this order of the court, See, as committee, paid to the Huffman Fruit Company $4,010.20, and at the time of this payment, the said company made out and forwarded to the District National Bank in Washington a check for $2,000.00 for the purpose of obtaining the release of the Hayden lien on the 104 acres, which, had it been obtained, would have secured the first lien on said 104 acres as contemplated by the court's order. The release of the lien was not obtained, and Hayden refused to execute and deliver the same, insisting upon his lien as against the entire 266 acres which, of course, included the 104 acres conveyed to White. A suit was afterwards instituted in the name of T. T. Huffman, trustee, against Hayden, in which suit, See, as committee, sought to obtain the release of the Hayden lien so far as it affected the 104 acres, but this relief was denied him. Whereupon the cause was appealed to this court (*Huffman, Tr., v. Hayden,* 114 W. Va. 660, 173 S. E. 561) with the result that, while the release of the lien was not decreed, Hayden was required to pay to See the sum of $2,000.00 on the theory that he could not refuse to execute the release for which this sum was paid and retain the payment which had been made to him out of trust funds with his knowledge, and See was decreed a first lien on the 104 acres for this sum, which amount he afterwards collected and applied on the White notes. The tract of 104 acres was sold, along with about 20 acres additional, for $2300.00 which, when prior liens and the costs and expenses of sale were taken into consideration, left nothing further to be applied on the White notes.

The claim of the plaintiff is based upon the action of See, as committee, in purchasing the White notes without securing thereby a first lien upon the tract of 104 acres of land, as directed by the court. It is contended by the plaintiff that this act was such negligence or improper conduct as to make See liable for the entire amount paid for said notes. See contends that he, in good faith, attempted to carry out the direction of the court with re-

spect to the purchase of these notes, and that in relying upon the assurance of Huffman that the release would be delivered upon the payment of $2,000.00, he was acting in good faith, and was guilty of nothing more than an error of judgment for which, under the law, he cannot be held responsible. He further contends that no loss on account of this transaction has been shown, and that when he delivered to the plaintiff the White notes, and at his request endorsed the same, and they were received by the plaintiff without protest, such delivery operated to release him from any liability arising from the original purchase thereof. He also relies upon the claim that at the time he delivered said notes to the plaintiff, there was a fair prospect of a substantial recovery thereon, either from Caleb J. White and Mabel A. White, makers of said notes, or the Huffman Fruit Company, the endorser thereof, and that the plaintiff neglected and failed to take advantage of such opportunity for recovery as then existed.

Code, 44-4-13 provides that "If any * * * committee shall, by his negligence or improper conduct, lose any debt or other money, he shall be charged with the principal of what is so lost and interest thereon in like manner as if he had received such principal." Code, 44-6-1 to 5 provide for the investment of fiduciary funds. Section 1 requires fiduciaries to invest funds in their hands which they are, or may be lawfully, required to retain, and to make application to the Circuit Court for direction as to investments, at the risk of being required to account for interest in case they fail to do so; Section 2 provides that such fiduciaries may invest such funds in certain securities without risk of liability to themselves personally, but further provides that this section shall not apply where instructions have been given with relation to investments by any court having jurisdiction in the matter, and that any investment, made in accordance with such special instruction, shall be legal and relieve the fiduciary from liability for any loss resulting therefrom; Section 3 provides for the method by which a fiduciary may obtain authority from a Circuit Court to make investments; and Sections 4 and 5 cover details

connected therewith, such as the right of the beneficiary of the fund to require investments to be made. Investments made either under an order of a court or of the class defined in Section 2 absolve the fiduciary from personal liability in case of loss. If he makes any other character of investment, or makes an investment without obtaining authority from a court therefor, he does so at his own risk and is subject to the rule of prudence and good faith required upon the part of all fiduciaries with respect to funds placed in their hands. We have been cited to a number of cases to the effect that "Courts of equity look with indulgence on acts of fiduciaries, and if it is manifest that they have acted in good faith in the exercise of a fair discretion, and in the same manner in which a prudent man would act in regard to his own property, they will not be held liable for any loss which may occur." *Watkins* v. *Stewart*, 78 Va. 111; *Harris* v. *Orr*, 46 W. Va. 261, 33 S. E. 257, 76 Am. St. Rep. 815; *Windon* v. *Stewart*, 43 W. Va. 711, 28 S. E. 776; *Koteen* v. *Bickers*, 163 Va. 676, 177 S. E. 904; *Clemons* v. *Dennis*, 165 Va. 18, 181 S. E. 387. The case of *Windon* v. *Stewart* involved the failure of a guardian to account for rents and certain expenditures made by him for improvements on the ward's property; the case of *Harris* v. *Orr* involved the failure of an administrator to collect assets; in the case of *Koteen* v. *Bickers*, the executors, under the terms of the will, were only made responsible for wilful default, and while this provision was held not to excuse the executors from all liability, it no doubt had a material bearing on the decision reached; and in *Clemons* v. *Dennis*, the question was that of a deposit of a trust fund in a bank which afterwards failed. In all of these cases the matter of discretion and good judgment was involved, and come clearly within the rule quoted above from the case of *Watkins* v. *Stewart, supra*. In none of these cases was the violation of a court order respecting investments involved. The rule that a guardian, when he has acted in good faith, cannot be held liable for mere errors of judgment or lack of "sharp sighted vigilance", applies, we think, to the ordinary transactions with respect to an estate, such as the collection of debts, rental of property and care of in-

vestments legally made. So far as our investigations have gone, we have not found that it has been applied to excuse a plain violation of some specific statute or the order of a court made thereunder. The weakness of See's case is that he made the loan in violation of the order of the court made in a proceeding in which he sought authority to make a specific investment. He had no right to purchase the notes until the release of the Hayden lien was actually delivered to him, or where it would be automatically delivered to him upon payment of the sum of money agreed to be paid therefor. When he accepted the assurance of Huffman that the release would be forthcoming, he did so at his own risk. To hold otherwise would be to allow fiduciaries to invest the funds in their hands on their judgment of the credit to be given to the assurance of individuals with whom they deal. It can hardly be contended that a fiduciary would be warranted in loaning money upon a mere promise that a deed of trust or another character of security would be later delivered. We think, therefore, that when See, as committee, purchased the White notes, in violation of the order of the court under which he acted, he assumed liability for any loss which might develop from a failure on his part to follow the directions of such order.

But it is contended by See that inasmuch as the 104 acres did not sell for a sum in excess of the $2,000.00 he received from Hayden, when costs of suit and expenses of sale were taken into consideration, the estate of his ward is in as good a situation as if he had obtained a first lien on said land. This contention overlooks the fact that considering Hayden's later attitude, it is a reasonable inference that he would have refused to release the lien, in which event the purchase of the notes would not have been made and no danger of loss would have developed. Counsel devote much space to a discussion of whether or not an order entered by the Circuit Court of Mineral county on the 27th day of July, 1933, in a proceeding relating to See's account with the John Knight estate, in which the court refused to allow See for services as attorney in his effort to protect the estate from threatened loss on account of the purchase of the White notes, because,

as the court held, the purchase of said notes was made in violation of its order, was *res adjudicata* as to the alleged fact of See's violation of such order. Whether or not that order was *res adjudicata* is not necessary to be determined herein because of our holding that See's action was in violation of such order. The question raised could only be important were we of the opinion that there was no substantial violation of the order, and be confronted with a former adjudication to the contrary, from which no appeal had been taken.

See also contends that the acceptance by the plaintiff of the White notes operated to discharge him from liability on account of the purchase of said notes, and cites 32 C. J., page 705, section 431; *Joyner* v. *Cooper*, (S. C.) 2 Bailey 199, and *In re Hathaway*, 80 Hun. 186, 30 N. Y. Supp. 171, in support of his contention. The citation to Corpus Juris and *Joyner* v. *Cooper* covers a case wherein a committee delivered to a successor a bond due by that successor to the estate which, of course, is not the case at bar. In the *Hathaway case*, the successor guardian acknowledged the receipt of a certain sum in cash, whereas, as a matter of fact, he accepted certain mortgage notes in lieu of cash, and it was held that such notes should be treated as investments made by the new guardian. In the case under consideration, the assets accepted by the plaintiff were not accepted as cash, but were specifically described as cash notes and other assets, as appear from the receipt which See required of William MacDonald, his first successor, and that subsequently were executed by the plaintiff to MacDonald. Under certain circumstances, it might be the duty of a successor guardian to accept assets in the hands of the former guardian, regardless of the form thereof, as a protection to the estate; and when he does so, unless there is a specific agreement to the contrary, he does not waive his right to look to the former guardian for an accounting as to any of the assets so delivered, the value of which might be less than that at which they were accepted.

But when the plaintiff, as the successor guardian, accepted the assets formerly acquired by See, especially the White notes, and secured See's endorsement thereof for

the purpose of facilitating their collection, he thereby deprived See of any power to protect himself with respect to any liability he may have incurred in relation to the purchase of said notes. It is in evidence that at the time of See's removal, he had undertaken to realize on these notes by placing the same in the hands of an attorney in Cumberland, Maryland, who was investigating the financial responsibility of the Whites and the Huffman Fruit Company. Whether or not anything could have been realized from the notes at the time is not clear from the record, but whatever opportunity See had to protect himself was lost when he transferred the notes to his successor. We think the plaintiff was under obligation to pursue with diligence an effort to realize on these notes, not only as a matter of protection to the estate of his ward, but as one of equity to the former committee. The plaintiff became responsible to the estate of the insane person for the value, if any, of the White notes, at the time they were delivered to him, and See was entitled to credit for such value as of that date. Whether the notes had any value at that time can only be determined by a further effort to collect the notes, taking into consideration any change of conditions affecting their value which may have been brought about by the failure of the present committee to make reasonable efforts to collect the same.

It results from this discussion that we are of the opinion to reverse the Circuit Court in so far as the decree complained of released the defendant, See, and the surety on his bond as committee from all liability growing out of the purchase of the Caleb J. White notes, and to remand the case for the purpose of determining the value, if any, of the White notes at the time they were delivered to the plaintiff, as committee for John Knight.

The cause is therefore reversed and remanded to the circuit court of Mineral County for further proceedings in accordance with the rulings herein announced.

*Reversed and remanded.*